E-FILED
Thursday, 15 February, 2018  11:52:28 AM
Clerk, U.S. District Court, ILCD

5590-10
KEF/tlp

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| LILLIE SMITH, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF PAUL E. CLIFTON, DECEDENT, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No.: 2:17-cv-02070-EIL |
| CHAMPAIGN COUNTY SHERIFF DAN WALSH, IN HIS OFFICIAL CAPACITY; BRYCE GOOD; JUSTIN RZECHULA; COREY PANKOW; RYAN SHAW; TODD GILL; AMBER KOCHER; CHAMPAIGN COUNTY, ILLINOIS; JO BATES, LPN; ADEYEMI FATOKI, MD, MPH; CECILE KEMP, LPN; and CORRECT CARE SOLUTIONS, LLC, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COME the Defendants, CHAMPAIGN COUNTY SHERIFF DAN WALSH, IN HIS OFFICIAL CAPACITY, BRYCE GOOD, JUSTIN RZECHULA, COREY PANKOW, RYAN SHAW, TODD GILL, AMBER KOCHER, and CHAMPAIGN COUNTY, ILLINOIS, by KEITH E. FRUEHLING of HEYL, ROYSTER, VOELKER & ALLEN, their attorneys, and for their Answer to the First Amended Complaint of the Plaintiff, LILLIE SMITH, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF PAUL E. CLIFTON, DECEDENT, state as follows:

**JURISDICTION AND VENUE**

1.      This is a civil action arising under the Fourteenth Amendment to the United States Constitution; The Civil Rights Act of 1964 – 42 U.S.C. §1983 and §1988; The Illinois Constitution, Article I §2 and §12; and Illinois State Law- 740 ILCS §180/0.01 et seq.; 735 ILCS §5/2-1704; 740 ILCS §23/5; and 755 ILCS §5/27-6.

**ANSWER:**    **Defendant allows the allegations of the current complaint to speak for**
**themselves.**

2.    The Court has jurisdiction of this matter pursuant to 28 U.S.C. §1331, §1343(a)(3),
and also supplemental jurisdiction of state claims pursuant to 28 U.S.C. §1367.

**ANSWER:    Admit.**

3.    This judicial district is the appropriate venue under 28 U.S.C. §1391(b) and (e)(1)
because the events giving rise to the suit occurred in this judicial district.

**ANSWER:    Admit.**

<u>**PARTIES**</u>

4.    Decedent Paul Clifton was at all times relevant a resident of the State of Illinois and
the City of Urbana.

**ANSWER:    Defendant has insufficient information with which to admit or deny, and**
**therefore denies the same.**

5.    Plaintiff Lillie Smith, Independent Administrator of the Estate of Paul E. Clifton,
Decedent, brings this suit and was at all times relevant a resident of the State of Illinois and the
City of Urbana.

**ANSWER:    Defendant has insufficient information with which to admit or deny, and**
**therefore denies the same.**

6.    Defendant Dan Walsh was at all times relevant the Sheriff of Champaign County,
Illinois, acting under color of state law and is sued in his official capacity. He was at all times
relevant an elected official in charge of the Downtown Adult Detention and the Satellite Adult
Detention (hereinafter "Champaign County Jails"). The Champaign County Jails are a part of the

Sheriff's department, which is a local unit of government formed to incarcerate violators of the law.

**ANSWER:**    **Defendant admits the first sentence. Defendant admits the second sentence, except that she denies the facilities are known as described. Defendant admits the third sentence, except denies that said facilities are a part of the "Sheriff's Department," and denies that the purpose that is described was the motivation for the Office's formation.**

7.    Defendant Bryce Good, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:**    **Defendant admits the first sentence. Defendant allows the allegations of this complaint to speak for themselves. If Mr. Good was working in the Champaign County Correctional Center, it was presumably within his course and scope of employment.**

8.    Defendant Justin Rzechula, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:**    **Defendant admits the first sentence. Defendant allows the allegations of this complaint to speak for themselves. If Mr. Rzechula was working in the Champaign County Correctional Center, it was presumably within his course and scope of employment.**

9.      Defendant Corey Pankow, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:      Defendant admits the first sentence.  Defendant allows the allegations of this complaint to speak for themselves. If Mr. Pankow was working in the Champaign County Correctional Center, it was presumably within his course and scope of employment.**

10.      Defendant Ryan Shaw, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:      Defendant admits the first sentence. Defendant allows the allegations of this complaint to speak for themselves. If Mr. Shaw was working in the Champaign County Correctional Center, it was presumably within his course and scope of employment.**

11.      Defendant Todd Gill, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:      Defendant admits the first sentence. Defendant allows the allegations of this complaint to speak for themselves. If Mr. Gill was working in the Champaign County Correctional Center, it was presumably within his course and scope of employment.**

12.     Defendant Sergeant Amber Kocher, a jail supervisor who was at all times relevant employed by Champaign County and responsible for employees of Champaign County Jail. He is sued in his individual capacity at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:      Defendant admits that Defendant was a Sergeant; that when on duty that she has some responsibility for supervising some correctional officers and that she was acting within the scope and course of her employment if she was working in the jail as alleged. Defendant denies the remaining allegations.**

13.     Defendant Champaign County, Illinois is the public entity responsible for Champaign County and both Champaign County Jails and is joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 145 Ill.2d R.20. (7th Cir. 2003)

**ANSWER:      Denied as alleged.**

14.     Defendant Jo Bates, LPN was at all times relevant a licensed practical nurse who is employed by Correct Care Solutions, LLC, contracted by Champaign County to provide health care to inmates and supervise the staff of nurses also employed by Correct Care Solutions contracted by Champaign County, acting under color of state law, and is sued in her individual capacity.

**ANSWER:      Defendant has insufficient information with which to personally admit or deny, and therefore denies the same. I am aware, however, that she did provide medical care at the jail at times.**

15.     Defendant Adeyemi Fatoki, MD, MPH, was at all times relevant a medical doctor licensed to practice in Illinois who is employed as the Regional Medical Director by Correct Care Solutions, LLC, contracted by Champaign County to provide health care to inmates and supervise

the staff of nurses also employed by Correct Care Solutions contracted by Champaign County, acting under color of state law, and is sued in his individual capacity.

**ANSWER:** **Defendant has insufficient information with which to personally admit or deny, and therefore denies the same. I am aware, however, that he did provide medical care at the jail at times.**

16.    Defendant Cecile Kemp, LPN was at all times relevant a licensed practical nurse who is employed by Correct Care Solutions, LLC, contracted by Champaign County to provide health care to inmates, acting under color of state law, and is sued in her individual capacity.

**ANSWER:** **Defendant has insufficient information with which to personally admit or deny, and therefore denies the same. I am aware, however, that she did provide medical care at the jail at times.**

17.    Defendant Correct Care Solutions, LLC, was at all times relevant a Limited Liability Company based out of Nashville, Tennessee, and authorized to do business in the State of Illinois, contracted by Champaign County.

**ANSWER:** **Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

<u>**FACTS**</u>

18.    The Decedent, Paul E. Clifton was arrested by the Champaign Police Department on March 26, 2016 at 1:20 am.

**ANSWER:** **Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

19.     Upon arrival to the Champaign County Jail on March 26, 2016, Mr. Clifton notified the Correctional Officers of his medical issues and was put on the Medical Special Watch list.

**ANSWER:     Defendant admits that Mr. Clifton's medical issues were inquired about and discussed generally, but denies that Mr. Clifton initially notified any officer of all of his medical conditions upon intake/booking and that he was immediately placed on any "Medical Special Watch" list.**

20.     Mr. Clifton, at all times relevant suffered from chronic obstructive pulmonary disease, asthma, and high blood pressure.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny, and therefore denies the same. Defendant does, however, believe that Mr. Clifton conveyed that he suffered from COPD and high blood pressure.**

21.     Mr. Clifton was a person with a disability as his chronic obstructive pulmonary disease and asthma substantially limited his ability to breathe.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

22.     Mr. Clifton was initially placed in cell H-3, with a mandate that a correctional officer check in on him every 15 minutes.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny the allegations regarding location, and therefore denies the same. However, Defendant admits that Mr. Clifton was placed on 15 minute cell checks during the morning of March 26, 2016.**

7

23.     Mr. Clifton suffered from an asthma attack at approximately 3:00 am on March 26, 2016. A correctional officer took Mr. Clifton out of his cell for a nebulizer treatment.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

24.     Mr. Clifton suffered from a second asthma attack at approximately 6:00 am on March 26, 2016. A correctional officer took Mr. Clifton out of his cell for a second nebulizer treatment.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

25.     At approximately 10:00 am on March 26, 2016, Defendant Jo Bates gave an intake interview to Mr. Clifton, wherein he notified Defendant Bates that he had chronic obstructive pulmonary disease, asthma, and high blood pressure. Mr. Clifton notified Defendant Bates that he brought an inhaler with him, but did not have blood pressure medication.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

26.     At approximately 2:00 pm on March 26, 2016, 4 hours after his initial intake interview with Defendant Bates, Defendant Bates placed a phone call to Defendant Fatoki to inquire about blood pressure medication for Mr. Clifton, which was prescribed and provided to Mr. Clifton.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

27.     At no time was Defendant Fatoki present to give Mr. Clifton a physical examination. Defendant Fatoki relied only on the information given to him by Defendant Bates to prescribe medication to treat Mr. Clifton's serious medical needs.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

28.     At approximately 3:30 pm on March 26, 2016, Defendant Amber Kocher noted that Mr. Clifton requested to use his inhaler. Defendant Kocher noticed that it was empty and no longer good for use, but with deliberate indifference still gave it to Mr. Clifton. Defendant Kocher advised Clifton that if he was going to continue to suffer from his chronic obstructive pulmonary disease and asthma, a nurse or doctor would have to authorize nebulizer treatments.

**ANSWER:     Denied as alleged.**

29.     At approximately 4:00 pm, Defendant Kocher noticed that Mr. Clifton was sweating profusely while a correctional officer administered a nebulizer treatment. Defendant Kocher called Defendant Bates to take Mr. Clifton's vitals, and noted that his blood pressure was extremely high. Defendant Bates chose then to take his vitals manually and Mr. Clifton's blood pressure appeared to be lower.

**ANSWER:     Admit.**

30.     Defendant Kocher asked to call an ambulance for Mr. Clifton. Defendant Bates responded by placing a telephone call to Defendant Fatoki first, who, without physically examining Mr. Clifton at any point in time, with deliberate indifference, advised to give Mr. Clifton more blood pressure medication and not to "send him out."

**ANSWER:** **Defendant admits the first sentence, but denies the remaining allegations as alleged.**

31.     At 5:17 pm, Defendant Bates sent an email to the email groups entitled "Corrections Sergeants; Corrections" stating that Mr. Clifton had his inhaler in booking and that he can have nebulizer treatments as needed every 4 hours.

**ANSWER:** **Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

32.     At approximately 12:00 am on March 27, 2016, Defendant Good was conducting cell checks, during which Mr. Clifton stated that his chest hurt.

**ANSWER:** **Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

33.     Defendant Good, with deliberate indifference, advised Mr. Clifton to "hang on" while he completed cell checks and spoke with a sergeant regarding his nebulizer treatment, delaying his treatment by 30 minutes. The email which went out at 5:17 pm on March 26, 2016, advising that Mr. Clifton could have his nebulizer treatments made obsolete any need to ask a sergeant for approval prior to nebulizer administration.

**ANSWER:** **Denied as alleged.**

34.     Defendant Good sought permission from a sergeant and then told Defendant Rzecuhla to administer to Mr. Clifton his nebulizer treatment in spite of the email which went out at 5:17pm on March 26, 2016, instructing correctional officers to simply provide Mr. Clifton with nebulizer treatment without clearance from a sergeant.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

35.    Defendant Rzechula then delayed Mr. Clifton's treatment by another 20-30 minutes by checking his email for a notification that Mr. Clifton was allowed to receive nebulizer treatment, after Defendant Good received permission from a sergeant.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

36.    Defendants Walsh and Champaign County failed to implement training procedures to ensure that inmates such as Mr. Clifton received medical attention as quickly as possible, instead, with deliberate indifference, leaving unclear the procedures necessary to provide medical attention.

**ANSWER:     Denied.**

37.    At 1:21 am on March 27, 2016, Defendant Rzechula emailed the medical staff providing Mr. Clifton's vitals and stating that Mr. Clifton had a breathing treatment.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

38.    At 9:00 am on March 27, 2016, Defendant Pankow was conducting cell checks when Mr. Clifton requested a nebulizer treatment. Defendant Pankow, instead of responding immediately, with deliberate indifference, he chose to finish his cell checks and then take Mr. Clifton to administer his nebulizer treatment.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

11

39.     Defendant Pankow gave the bag containing the parts to the nebulizer to Mr. Clifton.

**ANSWER:    Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

40.     Mr. Clifton advised Defendant Pankow that the nebulizer bag did not contain all of the necessary parts.

**ANSWER:    Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

41.     Defendant Pankow then noticed Mr. Clifton put the medication into the machine backwards, at which point Defendant Pankow turned his back on Mr. Clifton, in order to dump the medication out in the sink and then Defendant Pankow put new medication into the mouthpiece. While Defendant Shaw heard Mr. Clifton repetitively state "hurry up."

**ANSWER:    Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

42.     Defendant Kocher walked into the booking area and noted Mr. Clifton holding the nebulizer to his face and was sweating profusely.

**ANSWER:    Defendant admits this occurred on March 27, 2016.**

43.     Defendant Kocher retrieved a tissue or paper towel to wipe his sweat and asked Mr. Clifton if he would prefer a cold washcloth. Mr. Clifton did not respond.

 **ANSWER:    Defendant admits the first sentence occurred on March 27, 2016, and admits that Mr. Clifton did not respond to the question.**

12

44.     Defendant Kocher then noticed that the nebulizer Mr. Clifton was holding was not all the way in his mouth. Defendant Kocher told Mr. Clifton the nebulizer needed to be all the way into his mouth to get the proper treatment. Again Mr. Clifton did not respond. It was at this time Defendant Kocher realized 'something else' was going on with Mr. Clifton.

**ANSWER:     Defendant admits the first three sentences occurred on March 27, 2016, and admits that after the aforesaid allegations occurred, Defendant started to realize there was "something else" medically going on with Mr. Clifton.**

45.     Defendant Shaw and Defendant Pankow helped Defendant Kocher lower Mr. Clifton to the floor as Mr. Clifton began to have a seizure.

**ANSWER:     Admit Defendant assisted the others listed in lowering Clifton to the floor on March 27, 2016.**

46.     Defendant Kocher called for an ambulance and Defendant Pankow called for the nurse, Defendant Kemp.

**ANSWER:     Admit the allegation that Defendant called for an ambulance but denies the remaining allegations as a result of insufficient personal information with regard to timing as alleged.**

47.     Mr. Clifton clearly needed medical attention while incarcerated and specifically needed a trained medical professional when receiving nebulizer treatments.

**ANSWER:     Denied as alleged.**

48.     During the morning of March 27, 2016, when Mr. Clifton requested a nebulizer treatment no medical staff was present to assist and provide the nebulizer treatment until Defendant Pankow called for the nurse.

13

**ANSWER:     Defendant has insufficient information with which to personally admit or deny and therefore denies the same.**

49.     It is unclear when Defendant Kocher requested Mr. Clifton's vitals be taken, when they were actually taken or who took them based upon the numerous statements taken from the Defendant Kocher, Defendant Shaw and Defendant Pankow and the other employees of Champaign County Jail who were present at or near the time of these events.

**ANSWER:     Denied as alleged.**

50.     Defendant Kemp began providing direction when she arrived.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny and therefore denies the same.**

51.     At some point in these series of events, the pulse oximeter indicated that Mr. Clifton did not have a pulse. Defendant Kemp then read Mr. Clifton's radial pulse.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny and therefore denies the same.**

52.     Defendant Gill went to assist with Mr. Clifton's medical emergency and saw that Mr. Clifton was covered in sweat, had urinated on himself, and that his eyes were rolled to the back of his head.

**ANSWER:     Defendant has insufficient information with which to personally admit or deny and therefore denies the same.**

53.     Defendants Kocher, Shaw, Pankow, Gill, and Kemp were all actively working on Mr. Clifton using an AMBU bag which was failing to deliver air to Mr. Clifton's lungs. Mr. Clifton's tongue had swollen and closed his airway.

**ANSWER:**     **Denied as alleged.**

54.     Defendants Kocher, Shaw, Pankow, Gill, and Kemp all negligently and with deliberate indifference, failed to initiate CPR on Mr. Clifton, in accordance with their training for which Defendants Walsh, Champaign County, and Correct Care Solutions are responsible.

**ANSWER:**     **Denied as alleged.**

55.     EMS personnel arrived, and finding that Mr. Clifton had no pulse, immediately initiating CPR on Mr. Clifton. Their initial impression was that he was in respiratory arrest. EMT personnel ventilated Mr. Clifton, started an IV, and placed a monitor on him. The monitor showed a flat line, and Mr. Clifton was asystole.

**ANSWER:**     **Defendant has insufficient information with which to personally admit or deny, and therefore denies the same.**

56.     Mr. Clifton was transported to Carle Foundation Hospital, where he was pronounced dead on March 27, 2016, at 10:18 am.

**ANSWER:**     **Admit.**

### COUNT I: Constitutional Deprivation of Mr. Clifton's Constitutional Rights Pursuant to 42 U.S.C. §1983 vs. Defendant Kocher

57.     The Plaintiff reincorporates and realleges paragraphs 1-56 as if fully incorporated herein.

**ANSWER:**     **Defendant adopts and incorporates each and every one of her answers to paragraphs 1-56 above as and for her answers to this paragraph as if fully reproduced herein.**

58.    Defendant Kocher is the supervisory official responsible for development and implementation of policies and procedures for the identification and handling of inmates suffering serious medical conditions, including chronic obstructive pulmonary disease and asthma.

**ANSWER:    Denied as alleged.**

59.    As the person acting under the color of custom, Defendant Kocher caused Mr. Clifton to be deprived of his constitutional right to life.

**ANSWER:    Denied.**

60.    Defendant Kocher is responsible for conduct of the employees of Champaign County Jails and the well-being of their inmates.

**ANSWER:    Denied.**

61.    Because Mr. Clifton had no control over his confinement, Defendant Kocher had an absolute duty to care for and ensure Mr. Clifton's well-being and safety.

**ANSWER:    Denied.**

62.    After being made aware of Mr. Clifton's medical condition and emergency medical needs, Defendant Kocher exercised deliberate indifference to Mr. Clifton's serious medical needs by failing to provide requested and necessary medical treatment and failing to respond to Mr. Clifton's recurring pleas for medical assistance.

**ANSWER:    Denied.**

63.    By failing to call 911 when Mr. Clifton complained of chest pain and shortness of breath on March 26, 2016, and by failing to initiate CPR, Defendant Kocher deprived Mr. Clifton of his constitutional rights.

**ANSWER:    Denied.**

64.     Defendant Walsh was aware of and put on notice of the recent deaths in Champaign County Jails, and through Defendant Walsh's failure to implement policies and procedures to avoid reasonably foreseeable deaths that were avoidable with a modicum of medical training and attention, therefore directly deprived Mr. Clifton of his constitutional right to life.

**ANSWER:      Denied.**

65.     The failure to act on and respond to Mr. Clifton's serious medical needs and medical emergency proximately caused, in whole or in part, his conscious pain and suffering and his death, depriving Mr. Clifton of his rights under the Fourteenth Amendment and in violation of 42 U.S.C. §1983.

**ANSWER:      Denied.**

WHEREFORE, the Defendant, AMBER KOCHER, prays that judgment be entered in her favor, and against the Plaintiff, and for her costs of suit.

**DEFENDANT DEMANDS A TRIAL BY JURY**

**COUNT II: Constitutional Deprivation of Mr. Clifton's Constitutional Rights
Pursuant to 42 U.S.C. §1983 vs. Defendants Bates, Kemp, and Fatoki**

The allegations of Count II are not directed at these Defendants, and therefore, do not respond to the same.

**COUNT III: Custom and Policy of Deliberate Indifference
Pursuant to 42 U.S.C. §1983
vs. Defendants Fatoki and Correct Care Solutions, LLC**

The allegations of Count III are not directed at these Defendants, and therefore, do not respond to the same.

17

**COUNT IV: Wrongful Death Pursuant to 740 ILCS §180/0.01 et seq. vs.  Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County**

Defendants have moved for reconsideration of an argument in their Motion to Dismiss that was unaddressed by the Court in its initial Order on that motion. That reconsideration motion is fully briefed and pending before the Court for its consideration.   The outcome of that reconsideration ought to impact the viability of Count IV. Thus, for the time being and until the Court rules that Count IV should remain, the Defendants generally deny all of the allegations of Count IV at this time. Defendants specifically deny any allegations asserting any wrongdoing and/or negligence of any kind on the part of any individual Defendant.  Assuming that Count IV survives the impact of the Court's anticipated Order, Defendants reserve and request an extension of time to answer with specificity the allegations of said count in detail and to assert appropriate affirmative defenses.

**COUNT V: Wrongful Death Pursuant to 740 ILCS §180/0.01 et seq. vs. Defendants Bates, Fatoki, Kemp, and Correct Care Solutions, LLC**

The allegations of Count V are not directed at these Defendants, and therefore, do not respond to the same.

**COUNT VI: Medical Malpractice Pursuant to 735 ILCS §5/2-1704 vs. Defendant Bates**

The allegations of Count VI are not directed at these Defendants, and therefore, do not respond to the same.

**COUNT VII: Medical Malpractice Pursuant to 735 ILCS §5/2-1704 vs. Defendant Fatoki**

The allegations of Count VII are not directed at these Defendants, and therefore, do not respond to the same.

**COUNT VIII: Medical Malpractice Pursuant to 735 ILCS §5/2-1704 vs. Defendant Kemp**

The allegations of Count VIII are not directed at these Defendants, and therefore, do not respond to the same.

**COUNT IX: Medical Malpractice Pursuant to 735 ILCS §5/2-1704  vs. Defendant Correct Care Solutions, LLC**

The allegations of Count IX are not directed at these Defendants, and therefore, do not respond to the same.

**AFFIRMATIVE DEFENSES**

**Count I**

NOW COMES the Defendant, AMBER KOCHER, Heyl, Royster, Voelker & Allen, and pursuant to the Federal Rules of Civil Procedure 8 (b) and (c), and hereby sets forth the following affirmative defenses to Count I:

1.      Defendant is entitled to qualified immunity on the federal law claim.

2.      To the extent that Plaintiff's First Amended Complaint references any action or omission on the part of the Defendant more than two years prior to the date that the Plaintiff filed her lawsuit on this federal count, said claim is are barred by the statute of limitations.

3.      To the extent that Plaintiff seeks to the above-named Defendant liable for acts or omissions of anyone other than herself/themselves under federal law, said claims are barred by law and Section 1983 does not allow claims based on vicarious liability or *respondeat superior* theories.

4.      To the extent that the deceased Plaintiff failed to exhaust his administrative remedies, this Defendant is entitled to a judgment as a matter of law on the claim based on federal law.

**DEFENDANT DEMANDS A TRIAL BY JURY**

CHAMPAIGN COUNTY SHERIFF DAN WALSH, IN HIS OFFICIAL CAPACITY, BRYCE GOOD, JUSTIN RZECHULA, COREY PANKOW, RYAN SHAW, TODD GILL, AMBER KOCHER, and CHAMPAIGN COUNTY, ILLINOIS, Defendants

BY:   s/Keith E. Fruehling

HEYL, ROYSTER, VOELKER & ALLEN

ARDC #: 6216098

301 North Neil Street, Suite 505

P. O. Box 1190

Champaign, IL  61824-1190

Telephone  217.344.0060

Facsimile  217.344.9295

kfruehling@heylroyster.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2018, I electronically filed the foregoing DEFENDANTS'

ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to the following:

Ms. Shayla Maatuka
Dodd & Maatuka
303 S. Mattis Ave., Suite 201
Champaign, IL 61821

Mr. Robert P. Vogt
Vogt & O'Kane
20 S. Clark St., Suite 1050
Chicago, IL 60603

I also hereby certify that I have mailed by United States Postal Service the document to

the following non-CM/ECF participant:  None.

s/ Keith E. Fruehling_____
Heyl, Royster, Voelker & Allen

33718143_1