E-FILED
Thursday, 22 February, 2018  12:44:24 PM
Clerk, U.S. District Court, ILCD

750-2089                              RPV                              #6191112

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| LILLIE SMITH, INDEPENDENT | ) | |
| ADMINISTRATOR   of the ESTATE | ) | |
| of PAUL E. CLIFTON, DECEDENT | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. 17 cv 2070 |
| | ) | |
| CHAMPAIGN COUNTY SHERIFF | ) | |
| DAN WALSH, IN HIS OFFICIAL | ) | |
| CAPACITY; BRYCE GOOD; JUSTIN | ) | District Judge Colin S. Bruce |
| RZECHULA; COREY PANKOW; | ) | Magistrate Judge Eric I. Long |
| RYAN SHAW; TODD GILL; AMBER | ) | |
| KOCHER; CHAMPAIGN COUNTY, | ) | |
| ILLINOIS; JO BATES, LPN; | ) | |
| ADEYEMI FATOKI, MD, MPH; | ) | |
| CECILE KEMP, LPN; and CORRECT | ) | |
| CARE SOLUTIONS, LLC; | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS JO BATES, CECILE KEMP, ADEYEMI FATOKI, MD AND CORRECT CARE SOLUTIONS' ANSWER TO THE PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants JO BATES, CECILE KEMP, ADEYEMI FATOKI, MD, and CORRECT CARE SOLUTIONS, LLC ("CCS") (collectively the "CCS Defendants") through their attorneys, ROBERT P. VOGT and VOGT & O'KANE, submit the following answer to the Plaintiff's First Amended Complaint.

## JURISDICTION AND VENUE

1.      This is a civil action arising under the Fourteenth Amendment to the United States Constitution; The Civil Rights Act of 1964 —42 U.S.C. §1983 and §1988; The Illinois

1

Constitution, Article I §2 and §12; and Illinois State Law- 740 ILCS §180/0.01 et seq.; 735 ILCS §5/2-1704; 740 ILCS §23/5; and 755 ILCS §5/27-6.

**ANSWER:** **The CCS Defendants do not dispute this Court's jurisdiction.**

2.      The Court has jurisdiction of this matter pursuant to 28 U.S.C. §1331, §1343(a)(3), and also supplemental jurisdiction of state claims pursuant to 28 U.S.C. §1367.

**ANSWER:** **The CCS Defendants do not dispute this Court's jurisdiction.**

3.      This judicial district is the appropriate venue under 28 U.S.C. §1391(b) and (e)(1) because the events giving rise to the suit occurred in this judicial district.

**ANSWER:** **The CCS Defendants do not dispute this is the appropriate venue for this action.**

## PARTIES

4.      Decedent Paul Clifton was at all times relevant a resident of the State of Illinois and the City of Urbana.

**ANSWER:** **The CCS Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4.**

5.      Plaintiff Lillie Smith, Independent Administrator of the Estate of Paul E. Clifton, Decedent, brings this suit and was at all times relevant a resident of the State of Illinois and the City of Urbana.

**ANSWER:** **The CCS Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5.**

6.     Defendant Dan Walsh was at all times relevant the Sheriff of Champaign County, Illinois, acting under color of state law and is sued in his official capacity. He was at all times relevant an elected official in charge of the Downtown Adult Detention and the Satellite Adult Detention (hereinafter "Champaign County Jails"). The Champaign County Jails are a part of the Sheriff's department, which is a local unit of government formed to incarcerate violators of the law.

**ANSWER:     This allegation is not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.**

7.     Defendant Bryce Good, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:     This allegation is not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.**

8.     Defendant Justin Rzechula, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:     This allegation is not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.**

9.     Defendant Corey Pankow, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

> **ANSWER:**    This allegation is not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.

10.   Defendant Ryan Shaw, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

> **ANSWER:**    This allegation is not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.

11.   Defendant Todd Gill, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

> **ANSWER:**    This allegation is not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.

l2.   Defendant Sergeant Amber Kocher, a jail supervisor who was at all times relevant employed by Champaign County and responsible for employees of Champaign County Jail. He is sued in his individual capacity at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

> **ANSWER:**    This allegation is not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.

13.   Defendant Champaign County, Illinois is the public entity responsible for Champaign County and both Champaign County Jails and is joined in this action pursuant to Carver v. Sheriff of LaSalle County 145 I11.2d R.20. (7[1h]Cir. 2003).

> **ANSWER:**    This allegation is not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.

14.    Defendant Jo Bates, LPN was at all times relevant a licensed practical nurse who is employed by Correct Care Solutions, LLC, contracted by Champaign County to provide health care to inmates and supervise the staff of nurses also employed by Correct Care Solutions contracted by Champaign County, acting under color of state law, and is sued in her individual capacity.

**ANSWER:**    **The CCS Defendants admit that Jo Bates, LPN was a nurse employed By CCS, but deny the remaining allegations of Paragraph 14.**

15.    Defendant Adeyemi Fatoki, MD, MPII, was at all times relevant a medical doctor licensed to practice in Illinois who is employed as the Regional Medical Director by Correct Care Solutions, LLC, contracted by Champaign County to provide health care to inmates and supervise the staff of nurses also employed by Correct Care Solutions contracted by Champaign County, acting under color of state law, and is sued in his individual capacity.

**ANSWER:**    **The CCS Defendants admit that Adeyemi Fatoki, MD was a medical doctor licensed to practice in Illinois and who was associated with CCS, but deny the remaining allegations of Paragraph 15.**

16.    Defendant Cecile Kemp, LPN was at all times relevant a licensed practical nurse who is employed by Correct Care Solutions, LLC, contracted by Champaign County to provide health care to inmates, acting under color of state law, and is sued in her individual capacity.

**ANSWER:**    **The CCS Defendants admit that Cecile Kemp was a nurse employed by CCS, but deny the rest of the remaining allegations of Paragraph 16.**

17.    Defendant Correct Care Solutions, LLC, was at all times relevant a Limited Liability Company based out of Nashville, Tennessee, and authorized to do business in the State of Illinois, contracted by Champaign County.

**ANSWER:** **CCS admits that it is a Limited Liability Company based in Nashville, Tennessee, and was properly authorized to do business in the State of Illinois.**

## FACTS

18.     The Decedent, Paul E. Clifton was arrested by the Champaign Police Department on March 26, 2016 at 1:20 am.

**ANSWER:** **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18.**

19.     Upon arrival to the Champaign County Jail on March 26, 2016, Mr. Clifton notified the Correctional Officers of his medical issues and was put on the Medical Special Watch list

**ANSWER:** **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19.**

20.     Mr. Clifton, at all times relevant suffered from chronic obstructive pulmonary disease, asthma, and high blood pressure.

**ANSWER:** **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20.**

21.     Mr. Clifton was a person with a disability as his chronic obstructive pulmonary disease and asthma substantially limited his ability to breathe.

**ANSWER:** **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21.**

22.     Mr. Clifton was initially placed in cell 14-3, with a mandate that a correctional officer check in on him every 15 minutes.

**ANSWER:** **The CCS Defendants admit that Mr. Clifton became an inmate at the Champaign County Jail and that his housing is reflected in his correctional records.**

6

23.     Mr. Clifton suffered from an asthma attack at approximately 3:00 am on March 26, 2016. A correctional officer took Mr. Clifton out of his cell for a nebulizer treatment.

**ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23.**

24.     Mr. Clifton suffered from a second asthma attack at approximately 6:00 am on March 26, 2016. A correctional officer took Mr. Clifton out of his cell for a second nebulizer treatment.

**ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24.**

25.     At approximately 10:00 am on March 26, 2016, Defendant Jo Bates gave an intake interview to Mr. Clifton, wherein he notified Defendant Bates that he had chronic obstructive pulmonary disease, asthma, and high blood pressure. Mr. Clifton notified Defendant Bates that he brought an inhaler with him, but did not have blood pressure medication.

**ANSWER:**     **The CCS Defendants admit the medical care reflected in the Plaintiff's CCS medical records, but deny the Plaintiff's characterization of those medical records.**

26.     At approximately 2:00 pm on March 26, 2016, 4 hours after his initial intake interview with Defendant Bates, Defendant Bates placed a phone call to Defendant Fatoki to inquire about blood pressure medication for Mr. Clifton, which was prescribed and provided to Mr. Clifton.

**ANSWER:**     **The CCS Defendants admit the medical care and treatment that is reflected in the Plaintiff's CCS medical records, but deny the Plaintiff's characterization of those records.**

27.    At no time was Defendant Fatoki present to give Mr. Clifton a physical examination. Defendant Fatoki relied only on the information given to him by Defendant Bates to prescribe medication to treat Mr. Clifton's serious medical needs.

**ANSWER:**    **The CCS Defendants admit the care and treatment that was provided to the Plaintiff as reflected in the Plaintiff's CCS medical records, but deny the Plaintiff's characterization of those records.**

28.    At approximately 3:30 pm on March 26, 2016, Defendant Amber Kocher noted that Mr. Clifton requested to use his inhaler. Defendant Kocher noticed that it was empty and no longer good for use, but with deliberate indifference still gave it to Mr. Clifton. Defendant Kocher advised Clifton that if he was going to continue to suffer from his chronic obstructive pulmonary disease and asthma, a nurse or doctor would have to authorize nebulizer treatments.

**ANSWER:**    **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28.**

29.    At approximately 4:00 pm, Defendant Kocher noticed that Mr. Clifton was sweating profusely while a correctional officer administered a nebulizer treatment. Defendant Kocher called Defendant Bates to take Mr. Clifton's vitals, and noted that his blood pressure was extremely high. Defendant Bates chose then to take his vitals manually and Mr. Clifton's blood pressure appeared to be lower.

**ANSWER:**    **The CCS Defendants admit the care and treatment that is reflected in the Plaintiff's CCS medical records, but deny the Plaintiff's characterization of those records.**

30.     Defendant Kocher asked to call an ambulance for Mr. Clifton. Defendant Bates responded by placing a telephone call to Defendant Fatoki first, who without physically examining Mr. Clifton at any point in time, with deliberate indifference, advised to give Mr. Clifton more blood pressure medication and not to "send him out."

> **ANSWER:**    **The CCS Defendants admit the care and treatment that is reflected in the Plaintiff's CCS medical records, but deny the Plaintiff's characterization of those records.**

31.     At 5:17 pm, Defendant Bates sent an email to the email groups entitled "Corrections Sergeants; Corrections" stating that Mr. Clifton had his inhaler in booking and that he can have nebulizer treatments as needed every 4 hours.

> **ANSWER:**    **The CCS Defendants admit the care and treatment that is reflected in the Plaintiff's CCS medical records, but deny the Plaintiff's characterization of those records.**

32.     At approximately 12:00 am on March 27, 2016, Defendant Good was conducting cell checks, during which Mr. Clifton stated that his chest hurt.

> **ANSWER:**    **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32.**

33.     Defendant Good, with deliberate indifference, advised Mr. Clifton to "hang on" while he completed cell checks and spoke with a sergeant regarding his nebulizer treatment, delaying his treatment by 30 minutes. The email which went out at 5:17 pm on March 26, 2016, advising that Mr. Clifton could have his nebulizer treatments made obsolete any need to ask a sergeant for approval prior to nebulizer administration.

> **ANSWER:**    **The allegations of Paragraph 33 are not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.**

34.     Defendant Good sought permission from a sergeant and then told Defendant Rzecuhla to administer to Mr. Clifton his nebulizer treatment in spite of the email which went out at 5:17pm on March 26, 2016, instructing correctional officers to simply provide Mr. Clifton with nebulizer treatment without clearance from a sergeant.

**ANSWER:     The allegations of Paragraph 34 are not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.**

35.     Defendant Rzechula then delayed Mr. Clifton's treatment by another 20-30 minutes by checking his email for a notification that Mr. Clifton was allowed to receive nebulizer treatment, after Defendant Good received permission from a sergeant.

**ANSWER:     The allegations of Paragraph 35 are not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.**

36.     Defendants Walsh and Champaign County failed to implement training procedures to ensure that inmates such as Mr. Clifton received medical attention as quickly as possible, instead, with deliberate indifference, leaving unclear the procedures necessary to provide medical attention.

**ANSWER:     The allegations of Paragraph 36 are not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.**

37.     At 1:21 am on March 27, 2016, Defendant Rzechula emailed the medical staff providing Mr. Clifton's vitals and stating that Mr. Clifton had a breathing treatment.

**ANSWER:     The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37.**

38.     At 9:00 am on March 27, 2016, Defendant Pankow was conducting cell checks when Mr. Clifton requested a nebulizer treatment. Defendant Pankow, instead of responding immediately, with deliberate indifference, he chose to finish his cell checks and then take Mr. Clifton to administer his nebulizer treatment.

> **ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 38.**

39.     Defendant Pankow gave the bag containing the parts to the nebulizer to Mr. Clifton.

> **ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 39.**

40.     Mr. Clifton advised Defendant Pankow that the nebulizer bag did not contain all of the necessary parts.

> **ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40.**

41.     Defendant Pankow then noticed Mr. Clifton put the medication into the machine backwards, at which point Defendant Pankow turned his back on Mr. Clifton, in order to dump the medication out in the sink and then Defendant Pankow put new medication into the mouthpiece. While Defendant Shaw heard Mr. Clifton repetitively state "hurry up."

> **ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 41.**

42.     Defendant Kocher walked into the booking area and noted Mr. Clifton holding the nebulizer to his face and was sweating profusely.

> **ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 42.**

43.     Defendant Kocher retrieved a tissue or paper towel to wipe his sweat and asked Mr. Clifton if he would prefer a cold washcloth. Mr. Clifton did not respond.

**ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43.**

44.     Defendant Kocher then noticed that the nebulizer Mr. Clifton was holding was not all the way in his mouth. Defendant Kocher told Mr. Clifton the nebulizer needed to be all the way into his mouth to get the proper treatment. Again Mr. Clifton did not respond. It was at this time Defendant Kocher realized 'something else' was going on with Mr. Clifton.

**ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 44.**

45.     Defendant Shaw and Defendant Pankow helped Defendant Kocher lower Mr. Clifton to the floor as Mr. Clifton began to have a seizure.

**ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 45.**

46.     Defendant Kocher called for an ambulance and Defendant Pankow called for the nurse, Defendant Kemp.

**ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 46.**

47.     Mr. Clifton clearly needed medical attention while incarcerated and specifically needed a trained medical professional when receiving nebulizer treatments.

**ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47.**

12

48.     During the morning of March 27, 2016, when Mr. Clifton requested a nebulizer treatment no medical staff was present to assist and provide the nebulizer treatment until Defendant Pankow called for the nurse.

**ANSWER:     The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48.**

49.     It is unclear when Defendant Kocher requested Mr. Clifton's vitals be taken, when they were actually taken or who took them based upon the numerous statements taken from the Defendant Kocher, Defendant Shaw and Defendant Pankow and the other employees of Champaign County Jail who were present at or near the time of these events.

**ANSWER:     The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49.**

50.     Defendant Kemp began providing direction when she arrived.

**ANSWER:     The CCS Defendants are unable to answer the allegations of Paragraph 50 because they are vague and confusing.**

51.     At some point in these series of events, the pulse oximeter indicated that Mr. Clifton did not have a pulse. Defendant Kemp then read Mr. Clifton's radial pulse.

**ANSWER:     The CCS Defendants are unable to answer the allegations of Paragraph 51 because they are vague and confusing .**

52.     Defendant Gill went to assist with Mr. Clifton's medical emergency and saw that Mr. Clifton was covered in sweat, had urinated on himself, and that his eyes were rolled to the back of his head.

**ANSWER:     The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 52.**

13

53.     Defendants Kocher, Shaw, Pankow, Gill, and Kemp were all actively working on Mr. Clifton using an AMBU bag which was failing to deliver air to Mr. Clifton's lungs. Mr. Clifton's tongue had swollen and closed his airway.

> **ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 53.**

54.     Defendants Kocher, Shaw, Pankow, Gill, and Kemp all negligently and with deliberate indifference, failed to initiate CPR on Mr. Clifton, in accordance with their training for which Defendants Walsh, Champaign County, and Correct Care Solutions are responsible.

> **ANSWER:**     **The CCS Defendants deny the allegations of Paragraph 54.**

55.     EMS personnel arrived, and finding that Mr. Clifton had no pulse, immediately initiating CPR on Mr. Clifton. Their initial impression was that he was in respiratory arrest. EMT personnel ventilated Mr. Clifton, started an IV, and placed a monitor on him. The monitor showed a flat line, and Mr. Clifton was asystole.

> **ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 55.**

56.     Mr. Clifton was transported to Carle Foundation Hospital, where he was pronounced dead on March 27, 2016, **at** 10:18 am.

> **ANSWER:**     **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 56.**

### COUNT I: Constitutional Deprivation of Mr. Clifton's Constitutional Rights Pursuant to 42 U.S.C. §1983 vs. Defendant Kocher

**57 – 65  The allegations contained in COUNT I are not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.**

57.     The Plaintiff reincorporates and realleges paragraphs 1-56 as if fully incorporated herein.

58.     Defendant Kocher is the supervisory official responsible for development and implementation of policies and procedures for the identification and handling of inmates suffering serious medical conditions, including chronic obstructive pulmonary disease and asthma.

59.     As the person acting under the color of custom, Defendant Kocher caused Mr. Clifton to be deprived of his constitutional right to life.

60.     Defendant Kocher is responsible for conduct of the employees of Champaign County Jails and the well-being of their inmates.

61.     Because Mr. Clifton had no control over his confinement, Defendant Kocher had an absolute duty to care for and ensure Mr. Clifton's well-being and safety.

62.     After being made aware of Mr. Clifton's medical condition and emergency medical needs, Defendant Kocher exercised deliberate indifference to Mr. Clifton's serious medical needs by failing to provide requested and necessary medical treatment and failing to respond to Mr. Clifton's recurring pleas for medical assistance.

63.     By failing to call 911 when Mr. Clifton complained of chest pain and shortness of breath on March 26, 2016, and by failing to initiate CPR, Defendant Kocher deprived Mr. Clifton of his constitutional rights.

64.     Defendant Walsh was aware of and put on notice of the recent deaths in Champaign County Jails, and through Defendant Walsh's failure to implement policies and

procedures to avoid reasonably foreseeable deaths that were avoidable with a modicum of medical training and attention, therefore directly deprived Mr. Clifton of his constitutional right to life.

65.     The failure to act on and respond to Mr. Clifton's serious medical needs and medical emergency proximately caused, in whole or in part, his conscious pain and suffering and his death, depriving Mr. Clifton of his rights under the Fourteenth Amendment and in violation of 42 U.S.C. §1983.

### <u>COUNT II: Constitutional Deprivation of Mr. Clifton's Constitutional Rights Pursuant to 42 U.S.C. §1983 vs. Defendants Rates, Kemp, and Fatoki</u>

66.     The Plaintiff reincorporates and realleges paragraphs 1-56 as if fully incorporated herein.

> **<u>ANSWER:</u>     The CCS Defendants incorporate and reinstate their answers to Paragraphs 1-56 as if fully set forth herein.**

67.     As persons acting under the color of custom, Defendants Bates, Kemp, and Fatoki, caused Mr. Clifton to be deprived of his constitutional right to life.

> **<u>ANSWER:</u>     The CCS Defendants deny the allegations of Paragraph 67.**

68.     Defendant Fatoki is the supervisory officials responsible for development and implementation of policies and procedures for the identification and handling of inmates suffering serious medical conditions, including chronic obstructive pulmonary disease and asthma.

> **<u>ANSWER:</u>     The CCS Defendants deny the allegations of Paragraph 68.**

69.     Defendants Bates, Fatoki, and Kemp are responsible for their patients, who are inmates of Champaign County Jails.

> **ANSWER:** **The CCS Defendants admit the duties imposed upon the CCS Defendants by the law, but deny the plaintiff's characterization of those duties.**

70. Because Mr. Clifton had no control over his confinement, Defendants Bates, Fatoki, and Kemp, contracted by Champaign County, had an absolute duty to care for and ensure Mr. Clifton's well-being.

> **ANSWER:** **The CCS Defendants deny the allegations of Paragraph 70.**

71. After being made aware of Mr. Clifton's medical condition and emergency medical needs, Defendant Bates exercised deliberate indifference to Mr. Clifton's serious medical needs by failing to provide requested and necessary medical treatment on March 26, 2016, when Mr. Clifton complained of chest pain and shortness of breath, therefore causing Mr. Clifton to be deprived of his constitutional rights.

> **ANSWER:** **The CCS Defendants deny the allegations of Paragraph 71.**

72. After being made aware of Mr. Clifton's medical condition and emergency medical needs, Defendant Fatoki exercised deliberate indifference to Mr. Clifton's serious medical needs by failing to physically examine Mr. Clifton, one of his patients, instead opting to prescribe medication over the phone, therefore causing Mr. Clifton to be deprived of his constitutional rights.

> **ANSWER:** **The CCS Defendants deny the allegations of Paragraph 72.**

73. After being made aware of Mr. Clifton's medical condition and emergency medical needs, Defendant Kemp exercised deliberate indifference to Mr. Clifton's serious medical needs by failing to provide requested and necessary medical treatment and failing to initiate CPR on Mr. Clifton when he did not have a pulse on March 27, 2016.

> **ANSWER:** The CCS Defendants deny the allegations of Paragraph 73.

74. As persons acting under the color of custom, Defendants Bates, Kemp, and Fatoki, caused Mr. Clifton to be deprived of his constitutional right to life.

> **ANSWER:** The CCS Defendants deny the allegations of Paragraph 74.

75. The failure to act on and respond to Mr. Clifton's serious medical needs and medical emergency proximately caused, in whole or in part, his conscious pain and suffering and his death, depriving Mr. Clifton of his rights under the Fourteenth Amendment and in violation of 42 U.S.C. §1983.

> **ANSWER:** The CCS Defendants deny the allegations of Paragraph 75.

## COUNT III: Custom and Policy of Deliberate Indifference Pursuant to 42 U.S,C. §1983 vs. Defendants Fatoki and Correct Care Solutions, LLC

76. Plaintiff reincorporates and realleges paragraphs 1-56 as if fully incorporated herein.

> **ANSWER:** The CCS Defendants repeat and restate their answers to Paragraphs 1-56 as fully set forth herein.

77. Defendants Fatoki and Correct Care Solutions, LLC are the supervisory officials responsible for the development and implementation of policies and procedures for the identification and handling of inmates suffering serious medical conditions, including chronic pulmonary obstructive disease and asthma.

> **ANSWER:** The CCS Defendants admit those duties imposed upon them by the law, but deny the plaintiff's characterization of those duties.

78.     Defendants Fatoki and Correct Care Solutions, LLC, are persons with final policymaking abilities who established the customs of conduct at Champaign County Jails.

**ANSWER:     The CCS Defendants deny the allegations of Paragraph 78.**

79.     Defendants Fatoki and Correct Care Solutions, LLC, were aware, because of the fourteen (14) deaths which have taken place in the Champaign County Jail since 2004, of the need for appropriate policies and procedures concerning the identification and handling of inmates suffering serious medical conditions, including chronic pulmonary obstructive disease and asthma.

**ANSWER:     The CCS Defendants deny the allegations of Paragraph 79.**

80.     Defendants Fatoki and Correct Care Solutions, LLC, were aware of this widespread practice of depriving inmates with medical conditions, such as Mr. Clifton, of their constitutional rights that, although not authorized by written law or express municipal policy, is now so permanent or well settled as to constitute a custom or usage with force of the law.

**ANSWER:     The CCS Defendants deny the allegations of Paragraph 80.**

81.     Despite knowledge of this need, Defendants Fatoki and Correct Care Solutions, LLC acted with deliberate indifference and failed to develop and implement adequate policies and procedures to ensure the safety and livelihood of the their patients, who are inmates housed in Champaign County Jail.

**ANSWER:     The CCS Defendants deny the allegations of Paragraph 81.**

82.     It was reasonably foreseeable, that without such policies and procedures, inmates such as Mr. Clifton, suffering from serious medical conditions, would continue to suffer without medical treatment at the hands of Defendants Fatoki and Correct Care Solutions, LLC.

**ANSWER:**     The CCS Defendants deny the allegations of Paragraph 82.

83.     Due to the failure of Defendants Fatoki and Correct Care Solutions, LLC to develop such policies and procedures as would train employees to treat medical conditions and emergencies appropriately, the employees at the jail failed or refused to provide Mr. Clifton with necessary medical care, thereby proximately causing in whole or in part his conscious pain and suffering and his death, depriving Mr. Clifton of his rights under the Fourteenth Amendment and in violation of 42 U.S.C. §1983.

**ANSWER:**     The CCS Defendants deny the allegations of Paragraph 83.

**COUNT IV: Wrongful Death Pursuant to 740 ILCS §I80/0.01 et seq. vs. Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County**

**84-96. The allegations of COUNT IV are not directed at the CCS Defendants and, therefore, the CCS Defendants make no answer thereto.**

84.     The Plaintiff reincorporates and realleges paragraphs 1-56 as if fully incorporated herein.

85.     The Plaintiff brings this action pursuant to the Illinois Wrongful Death Act.

86.     Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County failed to provide adequate medical care to Mr. Clifton about whose medical conditions they had preexisting knowledge.

87.     Defendants Walsh and Champaign County are responsible for developing, implementing, and training employees on policies and procedures which are adequate in preventing unnecessary inmate deaths.

88.     Defendants Good and Rzechula failed to provide adequate medical attention by failing to respond to Mr. Clifton's pleas for a nebulizer treatment in a timely manner in the early hours of March 27, 2016.

89.     Defendants Pankow, Shaw, Gill, and Kocher failed to respond to Mr. Clifton's medical emergency appropriately by failing to initiate CPR on Mr. Clifton once he became unresponsive.

90.     The combined failures of Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County resulted in Mr. Clifton's untimely and unnecessary death.

91.     On information and belief, at all relevant times, it was the duty and responsibility of the Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County to exercise reasonable care to provide for the medical needs of Mr. Clifton and all other inmates housed within Champaign County Jail.

92.     As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions and the breach of duty committed by Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County, Mr. Clifton suffered injuries that ultimately resulted in his untimely death.

93.     The family of Mr. Clifton has unexpectedly lost forever a loved one. Mr. Clifton was a loving man who left behind his mother, fiancée, children, and brothers.

94.     Mr. Clifton's family is not only grieving over their sudden loss but must also cope with the unexpected expense associated with his passing.

95.     As a direct and proximate result the breach of duty committed by Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County, Mr. Clifton's survivors suffered pecuniary loss and have been deprived of society, companionship, love, and affection of their son, fiance, father, and brother.

96.     Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County owed a duty to provide professional and responsible health services to Mr. Clifton. Notwithstanding this duty, after being made aware that Mr. Clifton required emergency medical care, Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County, acting in accordance with their policies and procedures, willfully, wantonly, or negligently refused to take action to provide Mr. Clifton with medical care, thereby proximately causing, in whole or in part, his conscious pain and suffering and his death.

### COUNT V: Wrongful Death Pursuant to 740 ILCS §180/0.01 et seq. vs. Defendants Bates, Fatoki, Kemp, and Correct Care Solutions, LLC

97.     The Plaintiff reincorporates and realleges paragraphs 1-56 as if fully incorporated herein.

> **ANSWER:**     **The CCS Defendants repeat and restate their answers to Paragraphs 1-56 as fully set forth herein.**

98.     The Plaintiff brings this action pursuant to the Illinois Wrongful Death Act.

> **ANSWER:**     **The allegations of Paragraph 98 are a statement of law for which no answer is required.**

99.     Defendants Bates, Fatoki, Kemp, and Correct Care Solutions, LLC failed to provide adequate medical care to Mr. Clifton about whose medical conditions they had preexisting knowledge.

> **ANSWER:**     **The CCS Defendants deny the allegations of Paragraph 99.**

100.   Defendants Fatoki and Correct Care Solutions, LLC, are responsible for developing, implementing, and training employees on policies and procedures which are adequate in preventing unnecessary inmate deaths.

**ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 100.**

101.   Defendant Bates failed to provide adequate medical attention to Mr. Clifton when he complained of chest pain and shortness of breath on March 26, 2016.

**ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 101.**

102.   Defendant Fatoki failed to provide adequate medical attention to Mr. Clifton when he failed to physically examine Mr. Clifton, instead opting to prescribe medications, sight unseen, over the phone. Defendant Fatoki also directed that Mr. Clifton "not be sent out" despite Mr. Clifton's emergent need for medical care.

**ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 102.**

103.   Defendant Kemp failed to respond to Mr. Clifton's medical emergency appropriately by failing to initiate CPR on Mr. Clifton once he became unresponsive and had no pulse.

**ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 103.**

104.   The combined failures of Defendants Bates, Fatoki, Kemp, and Correct Care Solutions, LLC resulted in Mr. Clifton's untimely and unnecessary death.

**ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 104.**

105.   On information and belief, at all relevant times, it was the duty and responsibility of the Defendants Bates, Fatoki, Kemp, and Correct Care Solutions, LLC to exercise reasonable care to provide for the medical needs of Mr. Clifton and all other inmates housed within Champaign County Jail.

**ANSWER:**   The CCS Defendants deny the allegations of Paragraph 105.

106.   As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions and the breach of duty committed by Defendants Bates, Fatoki, Kemp, and Correct Care Solutions, LLC, Mr. Clifton suffered injuries that ultimately resulted in his untimely death.

**ANSWER:**   The CCS Defendants deny the allegations of Paragraph 106.

107.   The family of Mr. Clifton has unexpectedly lost forever a loved one. Mr. Clifton was a loving man who left behind his mother, fiancée, children, and brothers.

**ANSWER:**   The CCS Defendants deny the allegations of Paragraph 107.

108.   Mr. Clifton's family is not only grieving over their sudden loss but must also cope with the unexpected expense associated with his passing.

**ANSWER:**   The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 108.

109.   As a direct and proximate result the breach of duty committed by Defendants Bates, Fatoki, Kemp, and Correct Care Solutions, LLC, Mr. Clifton's survivors suffered pecuniary Loss and have been deprived of society, companionship, love, and affection of their son, fiancé, father, and brother.

**ANSWER:** **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 109.**

110.   Defendants Bates, Fatoki, Kemp, and Correct Care Solutions, LLC owed a duty to provide professional and responsible health services to Mr. Clifton. Notwithstanding this duty, after being made aware that Mr. Clifton required emergency medical care, Defendants Bates, Fatoki, Kemp, and Correct Care Solutions, LLC, acting in accordance with their policies and procedures, willfully, wantonly, or negligently refused to take action to provide Mr. Clifton with medical care, thereby proximately causing, in whole or in part, his conscious pain and suffering and his death.

**ANSWER:** **The CCS Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 110.**

**COUNT VI: Medical Malpractice Pursuant to 735 1LCS §5/2-1704 vs. Defendant Bates**

111.   The Plaintiff reincorporates and realleges paragraphs 1-56 and 97-110 as if fully incorporated herein.

**ANSWER:** **The CCS Defendants repeat and restate their answers to Paragraphs 1-56 and 97-110 as fully set forth herein.**

112.   On or about March 26, 2016, Defendant Bates was a nurse licensed to practice medicine in the State of Illinois, and regularly engaged in the practice of medicine in Champaign County, Illinois.

**ANSWER:** **The CCS Defendants admit that Defendant Bates was a nurse licensed to practice in the State of Illinois.**

113.   On or about March 26, 2016, Defendant Bates held herself out as being duly competent and qualified to render medical care, attention, and treatment to the general public.

> **ANSWER:**    **The CCS Defendants admit that on or about March 26, 2016, Defendant Bates was a competent, qualified nurse.**

114.   On or about March 26, 2016, Defendant Bates was an employee or agent of Correct Care Solutions, LLC.

> **ANSWER:**    **The CCS Defendants admit that on March 26, 2016, Defendant Bates was an employee of CCS.**

115.   On information and belief Correct Care Solutions, LLC contracts with the Champaign County Jail to provide medical services to inmates.

> **ANSWER:**    **The CCS Defendants admit that CCS has a contract to provide medical services to inmates incarcerated at the Champaign County Jail.**

116.   On or about March 26, 2016, Defendant Bates had medical privileges in Champaign County.

> **ANSWER:**    **The CCS Defendants are not sure what the Plaintiff is alleging in connection with "medical privileges."**

117.   On or about March 26, 2016, Defendant Bates negligently failed to completely assess the decedent Paul Clifton who was incarcerated in Urbana, Champaign County, Illinois.

> **ANSWER:**    **The CCS Defendants deny the allegations of Paragraph 117.**

118.   On or about March 26, 2016, Defendant Bates negligently failed to provide medical services or interventions to the decedent Paul Clifton who was incarcerated in Urbana, Champaign County, Illinois.

> **ANSWER:**    **The CCS Defendants deny the allegations of Paragraph 118.**

119.   On or about March 26, 2016, Defendant Bates provided the decedent, Paul Clifton, with medication commonly prescribed to treat high blood pressure, but not chronic pulmonary obstructive disease or asthma.

**ANSWER:**   The CCS Defendants deny the allegations of Paragraph 119.

120.   On or about March 26, 2016, Defendant Bates failed to refer the decedent Paul Clifton to the Emergency Department with chest pain and shortness of breath, which could have prevented his untimely death.

**ANSWER:**   The CCS Defendants deny the allegations of Paragraph 120.

121.   On or about March 26, 2016 Defendant Bates owed a duty of care to the decedent, Paul Clifton to perform her duties within an acceptable standard of medical care within the medical community.

**ANSWER:**   The CCS Defendants admit only those duties imposed by law and deny the Plaintiff's characterization of those duties.

122.   Defendant Bates breached this standard of care in the manner described above, causing Mr. Clifton physical, mental and emotional pain, and ultimately, death.

**ANSWER:**   The CCS Defendants deny the allegations of Paragraph 122.

123.   As a direct and proximate result of the breach of the applicable standard of medical care by Defendant Bates, the decedent Paul Clifton suffered from his shortness of breath into the night.

**ANSWER:**   The CCS Defendants deny the allegations of Paragraph 123.

124.   By means of the negligence of the Defendant Bates and as a direct and proximate result of the breach of the applicable standard of medical care, the decedent, Paul Clifton suffered conscious pain and suffering, incurred future lost wages; suffered mental anguish; incurred medical expenses; suffered death and other damages.

**ANSWER:**     The CCS Defendants deny the allegations of Paragraph 124.

125.   All of the injuries and damages sustained by the decedent, Paul Clifton were the direct and proximate result of the negligent acts of the Defendant Bates without any act or omission on the part of the decedent.

**ANSWER:**     The CCS Defendants deny the allegations of Paragraph 125.

126.   Attached hereto as Exhibit 1 and incorporated herein in conformance with 735 ILCS 5/2-622 is the Affidavit of Counsel along with the report from a Health Care Professional and the Health Care Professional's curriculum vitae.

**ANSWER:**     The CCS Defendants deny the allegations of Paragraph 122.

## COUNT VII: Medical Malpractice Pursuant to 735 ILCS §5/2-1704 vs. Defendant Fatoki

127.   The Plaintiff reincorporates and realleges paragraphs 1-56 and 97-110 as if fully incorporated herein.

**ANSWER:**     The CCS Defendants repeat and restate their answers to Paragraphs 1-56 and 97-110 as fully set forth herein.

128.   On or about March 26, 2016, Defendant Fatoki was a medical doctor licensed to practice medicine in the State of Illinois, and regularly engaged in the practice of medicine in Champaign County, Illinois.

**ANSWER:**     The CCS Defendants admit that on March 26, 2016, Defendant Fatoki was a licensed physician in Illinois.

129.   On or about March 26, 2016, Defendant Fatoki held himself out as being duly competent and qualified to render medical care, attention, and treatment to the general public.

> **ANSWER:**   **The CCS Defendants admit that on March 26, 2016, Defendant Fatoki was a competent and qualified physician in the State of Illinois.**

130.   On or about March 26, 2016, Defendant Fatoki was an employee or agent of Correct Care Solutions, LLC.

> **ANSWER:**   **The CCS Defendants admit that on March 26, 2106, Defendant Fatoki was an agent of CCS.**

131.   On information and belief Correct Care Solutions, LLC contracts with the Champaign County Jail to provide medical services to inmates.

> **ANSWER:**   **The CCS Defendants admits that CCS had a contract to provide medical care and services to inmates incarcerated that the Champaign County Jail.**

132.   On or about March 26, 2016, Defendant Fatoki had medical privileges in Champaign County.

> **ANSWER:**   **The CCS Defendants are not sure what the Plaintiff means by "medical privileges."**

133.   On or about March 26, 2016, Defendant Fatoki negligently failed to completely assess the decedent Paul Clifton who was incarcerated in Urbana, Champaign County, Illinois.

> **ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 133.**

134.   On or about March 26, 2016, Defendant Fatoki negligently failed to provide sufficient medical services or interventions to the decedent Paul Clifton who was incarcerated in Urbana, Champaign County, Illinois.

> **ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 134.**

135.   On or about March 26, 2016, Defendant Fatoki did not physically examine Mr. Clifton.

> **ANSWER:**   **The CCS Defendants admit the care and treatment reflected in the Plaintiff's CCS medical records, but deny the Plaintiff's characterization of the records.**

136.   On or about March 26, 2016, Defendant Fatoki prescribed the decedent, Paul Clifton, with medication commonly prescribed to treat high blood pressure, but not chronic pulmonary obstructive disease or asthma.

> **ANSWER:**   **The CCS Defendants admit the care and treatment reflected in the Plaintiff's CCS medical records, but deny the Plaintiff's characterization of the records.**

137.   On or about March 26, 2016, Defendant Fatoki prescribed Mr. Clifton medication for high blood pressure but failed to assess Mr. Clifton's complete medical needs by prescribing 22 said medication via phone call. Defendant Fatoki also directed that Mr. Clifton not be "sent out" without physically examining Mr. Clifton.

> **ANSWER:**   **The CCS Defendants admit the care and treatment reflected in the Plaintiff's CCS medical records, but deny the Plaintiff's characterization of the records.**

138.   Defendant Fatoki owed a duty of care to the decedent, Paul Clifton to perform his duties within an acceptable standard of medical care within the medical community.

> **ANSWER:**   **The CCS Defendants admit only those duties imposed by the law, but deny the Plaintiff's characterization of those duties.**

139.   Defendant Fatoki breached this standard of care in the manner described above, causing Mr. Clifton physical, mental and emotional pain, and ultimately, death.

> **ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 139.**

140.    As a direct and proximate result of the breach of the applicable standard of medical care by Defendant Fatoki, the decedent Paul Clifton suffered from his shortness of breath into the night.

**ANSWER:    The CCS Defendants deny the allegations of Paragraph 140.**

141.    By means of the negligence of the Defendant Fatoki and as a direct and proximate result of the breach of the applicable standard of medical care, the decedent, Paul Clifton suffered conscious pain and suffering, incurred future lost wages; suffered mental anguish; incurred medical expenses; suffered death and other damages.

**ANSWER:    The CCS Defendants deny the allegations of Paragraph 141.**

142.    All of the injuries and damages sustained by the decedent, Paul Clifton were the direct and proximate result of the negligent acts of the Defendant Fatoki without any act or omission on the part of the decedent.

**ANSWER:    The CCS Defendants deny the allegations of Paragraph 142.**

143.    Attached hereto as Exhibit 2 and incorporated herein in conformance with 735 11,CS 5/2-622 is the Affidavit of Counsel along with the report from a Health Care Professional and the Health Care Professional's curriculum vitae.

**ANSWER:    The CCS Defendants deny the allegations of Paragraph 143.**

**COUNT VIII: Medical Malpractice Pursuant to 735 ILCS §5/2-1704 vs. Defendant Kemp**

144.    The Plaintiff reincorporates and realleges paragraphs 1-56 and 97-110 as if fully incorporated herein.

**ANSWER:    The CCS Defendants repeat and restate their answers to Paragraphs 1-56 and 97-110 as if fully set forth herein.**

31

145.    On or about March 27, 2016, Defendant Kemp was a nurse licensed to practice medicine in the State of Illinois, and regularly engaged in the practice of medicine in Champaign County, Illinois.

**ANSWER:**    **The CCS Defendants admit that Defendant Kemp was a nurse licensed to practice in the State of Illinois.**

146.    On or about March 27, 2016, Defendant Kemp held herself out as being duly competent and qualified to render medical care, attention, and treatment to the general public.

**ANSWER:**    **The CCS Defendants admit that on March 27, 2016, Nurse Kemp was a competent and qualified nurse.**

147.    On or about March 27, 2016, Defendant Kemp was an employee or agent of Correct Care Solutions, LLC.

**ANSWER:**    **The CCS Defendants admit that on March 27, 206, Nurse Kemp was an employee of CCS.**

148.    On information and belief Correct Care Solutions, LLC contracts with the Champaign County Jail to provide medical services to inmates.

**ANSWER:**    **The CCS Defendants admit that CCS entered into a contract to provide medical care and services to inmates incarcerated at the Champaign County Jail.**

149.    On or about March 27, 2016, Defendant Kemp had medical privileges in Champaign County.

**ANSWER:**    **The CCS Defendants are not sure what the Plaintiff means by "medical privileges."**

150.    On or about March 27, 2016, Defendant Kemp negligently failed to completely assess the decedent Paul Clifton who was incarcerated in Urbana, Champaign County, Illinois.

**ANSWER:**    **The CCS Defendants deny the allegations of Paragraph 150.**

151.   On or about March 27, 2016, Defendant Kemp negligently failed to provide medical services or interventions to the decedent Paul Clifton who was incarcerated in Urbana, Champaign County, Illinois.

> **ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 151.**

152.   On or about March 27, 2016, Defendant Kemp failed to properly assess Mr. Clifton's carotid pulse and initiate CPR upon finding that he was unresponsive.

> **ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 152.**

153.   On or about March 27, 2016, Defendant Kemp failed to properly treat Mr. Clifton's seizure by using an AMBU bag improperly and failing to clear Mr. Clifton's airway in order to use proper medical equipment.

> **ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 153.**

154.   On or about March 27, 2016 Defendant Kemp owed a duty of care to the decedent, Paul Clifton to perform her duties within an acceptable standard of medical care within the medical community.

> **ANSWER:**   **The CCS Defendants admit only those duties imposed by law, but deny the Plaintiff's characterization of those duties.**

155.   Defendant Kemp breached this standard of care in the manner described above, causing Mr. Clifton physical, mental and emotional pain, and ultimately, death.

> **ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 155.**

156.   As a direct and proximate result of the breach of the applicable standard of medical care by Defendant Kemp, the decedent Paul Clifton suffered from his shortness or breath into the night.

**ANSWER:**     The CCS Defendants deny the allegations of Paragraph 156.

157.   By means of the negligence of the Defendant Kemp and as a direct and proximate result of the breach of the applicable standard of medical care, the decedent, Paul Clifton suffered conscious pain and suffering, incurred future lost wages; suffered mental anguish; incurred medical expenses; suffered death and other damages.

**ANSWER:**     The CCS Defendants deny the allegations of Paragraph 157.

158.   All of the injuries and damages sustained by the decedent, Paul Clifton were the direct and proximate result of the negligent acts of the Defendant Kemp without any act or omission on the part of the decedent.

**ANSWER:**     The CCS Defendants deny the allegations of Paragraph 158.

159.   Attached hereto as Exhibit l and incorporated herein in conformance with 735 ILLS 5/2-622 is the Affidavit of Counsel along with the report from a Health Care Professional and the Health Care Professional's curriculum vitae.

**ANSWER:**     The CCS Defendants deny the allegations of Paragraph 159.

**COUNT IX: Medical Malpractice Pursuant to 735 ILCS §5/2-1704  vs. Defendant Correct Care Solutions, LLC**

160.   Plaintiff reincorporates and realleges paragraphs 1-56 and 97-110 as if fully incorporated herein.

**ANSWER:**     **The CCS Defendants repeat and restate their answers to Paragraphs 1-56 and 97-110 as fully set forth herein.**

161.   On or about March 26, 2016, and March 27, 2016, Defendants Bates, Fatoki, and Kemp had privileges at the Champaign County Jail.

**ANSWER:**     **The CCS Defendants are not sure what the plaintiff means by "privileges."**

162.  On or about March 26, 2016, and March 27, 2016, Defendant Correct Care Solutions, LLC employed Defendants Bates, Fatoki, and Kemp and held them out as being duly competent and qualified to render medical care, attention and treatment to the inmates at the Champaign County Jail.

> **ANSWER:**  **The CCS Defendants admit that CCS' employees were competent and qualified to provide medical care to inmates incarcerated at the Champaign County Jail.**

163.  On or about March 26, 2016, and March 27, 2016, Defendants Bates, Fatoki, and Kemp were acting as agents/employees of Defendant Correct Care Solutions, LLC and providing medical services to the decedent, Paul Clifton within the scope of that agency/employment.

> **ANSWER:**  **The CCS Defendants admit that Nurse Bates, Nurse Kemp and Dr. Fatoki were providing medical services as set forth in the Plaintiff's CCS medical records.**

164.  On or about March 26, 2016, and March 27, 2016, Defendants Bates, Fatoki, and Kemp were medical professionals licensed to practice medicine in the State of Illinois, and regularly engaged in the practice of medicine in Champaign County, Illinois.

> **ANSWER:**  **The CCS Defendants admit that Defendants Bates, Fatoki and Kemp were licensed medical professionals in the State of Illinois on March 26, 2016 and March 27, 2016.**

165.  On information and belief Correct Care Solutions, I,LC contracts with the Champaign County Jail to provide medical services to inmates.

> **ANSWER:**  **The CCS Defendants admit that CCS entered into a contract to provide medical care and services to inmates incarcerated at the Champaign County Jail.**

166.  On or about March 26, 2016, and March 27, 2016, Defendants Bates, Fatoki, and Kemp, acting as agents of Defendant Correct Care Solutions, LLC negligently

failed to completely assess the decedent Paul Clifton who was incarcerated in Urbana, Champaign County, Illinois.

>**ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 166.**

167.   On or about March 26, 2016, and March 27, 2016, Defendants Bates, Fatoki, and Kemp, acting as agents of Defendant Correct Care Solutions, LLC negligently failed to provide medical services or interventions to the decedent Paul Clifton who was incarcerated in Urbana, Champaign County, Illinois.

>**ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 167.**

168.   On or about March 26, 2016, Defendants Bates and Fatoki, acting as agents of Defendant Correct Care Solutions, LLC negligently failed to properly assess the decedent Paul Clifton.

>**ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 168.**

169.   On or about March 26, 2016, Defendants Bates and Fatoki, acting as agents of Defendant Correct Care Solutions, LLC provided the decedent, Paul Clifton, with medication commonly prescribed to treat high blood pressure.

>**ANSWER:**   **The CCS Defendants admit the care and treatment reflected in the Plaintiff's CCS medical records, but deny the Plaintiff's characterization of those records.**

170.   On or about March 26, 2016, Defendants Bates and Fatoki, acting as agents of Defendant Correct Care Solutions, LLC, failed to provide Mr. Clifton with adequate medical attention as required by his chronic obstructive pulmonary disease.

>**ANSWER:**   **The CCS Defendants deny the allegations of Paragraph 170.**

171.   On or about March 26, 2016, Defendants Bates and Fatoki, acting as agents of Defendant Correct Care Solutions, LLC failed to refer the decedent Paul Clifton to the Emergency Department with chest pain and shortness of breath, which could have prevented his untimely death.

**ANSWER:**     **The CCS Defendants deny the allegations of Paragraph 171.**

172.   On or about March 27, 2016, Defendant Kemp, acting as an agent of Defendant Correct Care Solutions, LLC, failed to properly assess Mr. Clifton's carotid pulse and initiate CPR upon finding that he was unresponsive.

**ANSWER:**     **The CCS Defendants deny the allegations of Paragraph 172.**

173.   On or about March 27, 2016, Defendant Kemp, acting as an agent of Defendant Correct Care Solutions, LLC, failed to properly treat Mr. Clifton's seizure by using an AMBU bag improperly and failing to clear Mr. Clifton's airway in order to use proper medical equipment.

**ANSWER:**     **The CCS Defendants deny the allegations of Paragraph 173**

174.   On or about March 26, 2016, and March 27, 2016, Defendant Correct Care Solutions, LLC owed a duty of care to the decedent, Paul Clifton to provide directly and through its agents Defendants Bates, Fatoki, and Kemp, an acceptable standard of medical care within the medical community and Defendant Correct Care Solutions, LLC breached this standard of care through the actions of its agents, Defendants Bates, Fatoki, and Kemp and by failing to properly supervise its agents.

**ANSWER:**     **The CCS Defendants deny the allegations of Paragraph 174.**

175.   Defendant Correct Care Solutions, LLC breached this standard of care in the manners described above, causing the decedent, Paul Clifton physical, mental and emotional pain, and ultimately, death.

**ANSWER:      The CCS Defendants deny the allegations of Paragraph 175.**

176.   By means of the negligence of the Defendant Correct Care Solutions, LLC and as a direct and proximate result of the breach of the applicable standard of medical care, the decedent, Paul Clifton suffered conscious pain and suffering, incurred future lost wages; suffered mental anguish; incurred medical expenses; suffered other damages and death.

**ANSWER:      The CCS Defendants deny the allegations of Paragraph 176.**

177.   All of the injuries and damages sustained by the decedent, Paul Clifton, were the direct and proximate result of the negligent acts of the Defendant Correct Care Solutions, LLC without any act or omission on the art of the decedent.

**ANSWER:      The CCS Defendants deny the allegations of Paragraph 177.**

178.   Attached hereto as Exhibit 1 and incorporated herein in conformance with 735 ILCS 5/2-622 is the Affidavit of Counsel along with the report from a Health Care Professional and the Health Care Professional's curriculum vitae.

**ANSWER:      The CCS Defendants deny the allegations of Paragraph 178.**

**\*\*THE CCS DEFENDANTS DEMAND A TRIAL BY JURY**

WHEREFORE, the CCS Defendants respectfully request that this case be dismissed.

Respectfully Submitted,

**VOGT & O'KANE**

By: _/s/ Robert P. Vogt__
        Robert P. Vogt


**VOGT & O'KANE**
Attorneys for the CCS Defendants
20 South Clark Street
Suite 1050
Chicago, IL 60603
312/236-5151
bvogt@vogtokane.com
pldgs/ CCS Defs. Answer to Pl's 1st Amended Complaint

## **VERIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters, the undersigned certifies as aforesaid that the undersigned believes the same to be true.

 /s/ Robert P. Vogt_____
**VOGT & O'KANE**
Attorney for the CCS Defendants
20 South Clark Street
Suite 1050
Chicago, IL 60603
312/236-5151
bvogt@vogtokane.com

750-2089                            RPV/kl                            #6191112

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| LILLIE SMITH, INDEPENDENT | ) | |
| ADMINISTRATOR   of the ESTATE | ) | |
| of PAUL E. CLIFTON, DECEDENT | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. 17-2070 |
| | ) | |
| CHAMPAIGN COUNTY SHERIFF | ) | |
| DAN WALSH, IN HIS OFFICIAL | ) | |
| CAPACITY; BRYCE GOOD; JUSTIN | ) | |
| RZECHULA; COREY PANKOW; | ) | |
| RYAN SHAW; TODD GILL; AMBER | ) | |
| KOCHER; CHAMPAIGN COUNTY, | ) | |
| ILLINOIS; JO BATES, LPN; | ) | |
| ADEYEMI FATOKI, MD, MPH; | ) | |
| CECILE KEMP, LPN; and CORRECT | ) | |
| CARE SOLUTIONS, LLC; | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Robert P. Vogt, certify that on **February 22, 2018** I electronically filed **The CCS Defendants' Answer to the Plaintiff's First Amended Complaint** with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:
- Shayla Maatuke  shayla@madelaw.net
- Keith E. Fruehling kfruehling@heylroyster.com

Respectfully Submitted,

**VOGT & O'KANE**

By: /s/ Robert P. Vogt
        Robert P. Vogt

**VOGT & O'KANE**
20 South Clark Street, Suite 1050
Chicago, IL 60603
312/236-5151
bvogt@vogtokane.com