E-FILED
Wednesday, 04 April, 2018  02:28:26 PM
Clerk, U.S. District Court, ILCD

5590-10
KEF/tlp

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| LILLIE SMITH, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF PAUL E. CLIFTON, DECEDENT, ) ) ) ) | |
| Plaintiff, ) | |
| vs. ) | No.: 2:17-cv-02070-EIL |
| CHAMPAIGN COUNTY SHERIFF DAN WALSH, IN HIS OFFICIAL CAPACITY; BRYCE GOOD; JUSTIN RZECHULA; COREY PANKOW; RYAN SHAW; TODD GILL; AMBER KOCHER; CHAMPAIGN COUNTY, ILLINOIS; JO BATES, LPN; ADEYEMI FATOKI, MD, MPH; CECILE KEMP, LPN; and CORRECT CARE SOLUTIONS, LLC, ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## DEFENDANTS' AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COME the Defendants, CHAMPAIGN COUNTY SHERIFF DAN WALSH, IN HIS OFFICIAL CAPACITY, BRYCE GOOD, JUSTIN RZECHULA, COREY PANKOW, RYAN SHAW, TODD GILL, AMBER KOCHER, and CHAMPAIGN COUNTY, ILLINOIS, by KEITH E. FRUEHLING of HEYL, ROYSTER, VOELKER & ALLEN, their attorneys, and for their Amended Answer to the First Amended Complaint of the Plaintiff, LILLIE SMITH, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF PAUL E. CLIFTON, DECEDENT, state as follows:

### JURISDICTION AND VENUE

1.      This is a civil action arising under the Fourteenth Amendment to the United States Constitution; The Civil Rights Act of 1964 – 42 U.S.C. §1983 and §1988; The Illinois Constitution, Article I §2 and §12; and Illinois State Law- 740 ILCS §180/0.01 et seq.; 735 ILCS §5/2-1704; 740 ILCS §23/5; and 755 ILCS §5/27-6.

**Exhibit A**

**ANSWER:     Defendants allow the allegations of the current complaint to speak for themselves.**

2.      The Court has jurisdiction of this matter pursuant to 28 U.S.C. §1331, §1343(a)(3), and also supplemental jurisdiction of state claims pursuant to 28 U.S.C. §1367.

**ANSWER:     Admit.**

3.      This judicial district is the appropriate venue under 28 U.S.C. §1391(b) and (e)(1) because the events giving rise to the suit occurred in this judicial district.

**ANSWER:     Admit.**

<u>**PARTIES**</u>

4.      Decedent Paul Clifton was at all times relevant a resident of the State of Illinois and the City of Urbana.

**ANSWER:     Defendants have insufficient information with which to admit or deny, and therefore deny the same.**

5.      Plaintiff Lillie Smith, Independent Administrator of the Estate of Paul E. Clifton, Decedent, brings this suit and was at all times relevant a resident of the State of Illinois and the City of Urbana.

**ANSWER:     Defendants have insufficient information with which to admit or deny, and therefore deny the same.**

6.      Defendant Dan Walsh was at all times relevant the Sheriff of Champaign County, Illinois, acting under color of state law and is sued in his official capacity. He was at all times relevant an elected official in charge of the Downtown Adult Detention and the Satellite Adult Detention (hereinafter "Champaign County Jails"). The Champaign County Jails are a part of the

Sheriff's department, which is a local unit of government formed to incarcerate violators of the law.

**ANSWER:  Defendants admit the first sentence. Defendants admit the second sentence, except that they deny the facilities are known as described. Defendants admit the third sentence, except deny that said facilities are a part of the "Sheriff's Department," and deny that the purpose that is described was the motivation for the Office's formation.**

7.  Defendant Bryce Good, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:  Defendants admit the first sentence. Defendants allow the allegations of this complaint to speak for themselves. If Mr. Good was working in the Champaign County Correctional Center, it was presumably within his course and scope of employment.**

8.  Defendant Justin Rzechula, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:  Defendants admit the first sentence. Defendants allow the allegations of this complaint to speak for themselves. If Mr. Rzechula was working in the Champaign County Correctional Center, it was presumably within his course and scope of employment.**

9.      Defendant Corey Pankow, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:      Defendants admit the first sentence.  Defendants allow the allegations of this complaint to speak for themselves. If Mr. Pankow was working in the Champaign County Correctional Center, it was presumably within his course and scope of employment.**

10.      Defendant Ryan Shaw, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:      Defendants admit the first sentence. Defendants allow the allegations of this complaint to speak for themselves. If Mr. Shaw was working in the Champaign County Correctional Center, it was presumably within his course and scope of employment.**

11.      Defendant Todd Gill, a Champaign County Jail correctional officer, was at all times relevant employed by Champaign County Jail. He is sued in his individual capacity, and at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:      Defendants admit the first sentence. Defendants allow the allegations of this complaint to speak for themselves. If Mr. Gill was working in the Champaign County Correctional Center, it was presumably within his course and scope of employment.**

12.     Defendant Sergeant Amber Kocher, a jail supervisor who was at all times relevant employed by Champaign County and responsible for employees of Champaign County Jail. He is sued in his individual capacity at all times relevant hereto he was acting under color of state law and within the course and scope of his employment.

**ANSWER:     Defendants admit that Defendant Kocher was a Sergeant; that when on duty that she has some responsibility for supervising some correctional officers and that she was acting within the scope and course of her employment if she was working in the jail as alleged.   Defendants deny the remaining allegations.**

13.     Defendant Champaign County, Illinois is the public entity responsible for Champaign County and both Champaign County Jails and is joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 145 Ill.2d R.20. (7th Cir. 2003)

**ANSWER:     Denied as alleged.**

14.     Defendant Jo Bates, LPN was at all times relevant a licensed practical nurse who is employed by Correct Care Solutions, LLC, contracted by Champaign County to provide health care to inmates and supervise the staff of nurses also employed by Correct Care Solutions contracted by Champaign County, acting under color of state law, and is sued in her individual capacity.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny, and therefore deny the same. They are aware, however, that Nurse Bates provided medical care at the jail.**

15.     Defendant Adeyemi Fatoki, MD, MPH, was at all times relevant a medical doctor licensed to practice in Illinois who is employed as the Regional Medical Director by Correct Care Solutions, LLC, contracted by Champaign County to provide health care to inmates and supervise

the staff of nurses also employed by Correct Care Solutions contracted by Champaign County, acting under color of state law, and is sued in his individual capacity.

**ANSWER:** **Defendants have insufficient information with which to personally admit or deny, and therefore deny the same. They are aware, however, that he did provide medical care at the jail at times.**

16.    Defendant Cecile Kemp, LPN was at all times relevant a licensed practical nurse who is employed by Correct Care Solutions, LLC, contracted by Champaign County to provide health care to inmates, acting under color of state law, and is sued in her individual capacity.

**ANSWER:** **Defendants have insufficient information with which to personally admit or deny, and therefore deny the same. They are aware, however, that she did provide medical care at the jail.**

17.    Defendant Correct Care Solutions, LLC, was at all times relevant a Limited Liability Company based out of Nashville, Tennessee, and authorized to do business in the State of Illinois, contracted by Champaign County.

**ANSWER:** **Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

<u>**FACTS**</u>

18.    The Decedent, Paul E. Clifton was arrested by the Champaign Police Department on March 26, 2016 at 1:20 am.

**ANSWER:** **Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

19.     Upon arrival to the Champaign County Jail on March 26, 2016, Mr. Clifton notified the Correctional Officers of his medical issues and was put on the Medical Special Watch list.

**ANSWER:     Defendants admit that Mr. Clifton's medical issues were inquired about and discussed generally, but deny that Mr. Clifton initially notified any officer of all of his medical conditions upon intake/booking and that he was immediately placed on any "Medical Special Watch" list.**

20.     Mr. Clifton, at all times relevant suffered from chronic obstructive pulmonary disease, asthma, and high blood pressure.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny, and therefore deny the same. Defendants do, however, believe that Mr. Clifton conveyed that he suffered from COPD and high blood pressure.**

21.     Mr. Clifton was a person with a disability as his chronic obstructive pulmonary disease and asthma substantially limited his ability to breathe.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

22.     Mr. Clifton was initially placed in cell H-3, with a mandate that a correctional officer check in on him every 15 minutes.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny the allegations regarding location, and therefore deny the same. However, Defendants admit that Mr. Clifton was placed on 15 minute cell checks during the morning of March 26, 2016.**

23.     Mr. Clifton suffered from an asthma attack at approximately 3:00 am on March 26, 2016. A correctional officer took Mr. Clifton out of his cell for a nebulizer treatment.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

24.     Mr. Clifton suffered from a second asthma attack at approximately 6:00 am on March 26, 2016. A correctional officer took Mr. Clifton out of his cell for a second nebulizer treatment.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

25.     At approximately 10:00 am on March 26, 2016, Defendant Jo Bates gave an intake interview to Mr. Clifton, wherein he notified Defendant Bates that he had chronic obstructive pulmonary disease, asthma, and high blood pressure. Mr. Clifton notified Defendant Bates that he brought an inhaler with him, but did not have blood pressure medication.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

26.     At approximately 2:00 pm on March 26, 2016, 4 hours after his initial intake interview with Defendant Bates, Defendant Bates placed a phone call to Defendant Fatoki to inquire about blood pressure medication for Mr. Clifton, which was prescribed and provided to Mr. Clifton.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

27.     At no time was Defendant Fatoki present to give Mr. Clifton a physical examination. Defendant Fatoki relied only on the information given to him by Defendant Bates to prescribe medication to treat Mr. Clifton's serious medical needs.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

28.     At approximately 3:30 pm on March 26, 2016, Defendant Amber Kocher noted that Mr. Clifton requested to use his inhaler. Defendant Kocher noticed that it was empty and no longer good for use, but with deliberate indifference still gave it to Mr. Clifton. Defendant Kocher advised Clifton that if he was going to continue to suffer from his chronic obstructive pulmonary disease and asthma, a nurse or doctor would have to authorize nebulizer treatments.

**ANSWER:     Denied as alleged.**

29.     At approximately 4:00 pm, Defendant Kocher noticed that Mr. Clifton was sweating profusely while a correctional officer administered a nebulizer treatment. Defendant Kocher called Defendant Bates to take Mr. Clifton's vitals, and noted that his blood pressure was extremely high. Defendant Bates chose then to take his vitals manually and Mr. Clifton's blood pressure appeared to be lower.

**ANSWER:     Admit.**

30.     Defendant Kocher asked to call an ambulance for Mr. Clifton. Defendant Bates responded by placing a telephone call to Defendant Fatoki first, who, without physically examining Mr. Clifton at any point in time, with deliberate indifference, advised to give Mr. Clifton more blood pressure medication and not to "send him out."

**ANSWER:**    **Defendants admit the first sentence, but deny the remaining allegations as alleged.**

31.    At 5:17 pm, Defendant Bates sent an email to the email groups entitled "Corrections Sergeants; Corrections" stating that Mr. Clifton had his inhaler in booking and that he can have nebulizer treatments as needed every 4 hours.

**ANSWER:**    **Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

32.    At approximately 12:00 am on March 27, 2016, Defendant Good was conducting cell checks, during which Mr. Clifton stated that his chest hurt.

**ANSWER:**    **Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

33.    Defendant Good, with deliberate indifference, advised Mr. Clifton to "hang on" while he completed cell checks and spoke with a sergeant regarding his nebulizer treatment, delaying his treatment by 30 minutes. The email which went out at 5:17 pm on March 26, 2016, advising that Mr. Clifton could have his nebulizer treatments made obsolete any need to ask a sergeant for approval prior to nebulizer administration.

**ANSWER:**    **Denied as alleged.**

34.    Defendant Good sought permission from a sergeant and then told Defendant Rzecuhla to administer to Mr. Clifton his nebulizer treatment in spite of the email which went out at 5:17pm on March 26, 2016, instructing correctional officers to simply provide Mr. Clifton with nebulizer treatment without clearance from a sergeant.

**ANSWER:** **Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

35.    Defendant Rzechula then delayed Mr. Clifton's treatment by another 20-30 minutes by checking his email for a notification that Mr. Clifton was allowed to receive nebulizer treatment, after Defendant Good received permission from a sergeant.

**ANSWER:** **Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

36.    Defendants Walsh and Champaign County failed to implement training procedures to ensure that inmates such as Mr. Clifton received medical attention as quickly as possible, instead, with deliberate indifference, leaving unclear the procedures necessary to provide medical attention.

**ANSWER:** **Denied.**

37.    At 1:21 am on March 27, 2016, Defendant Rzechula emailed the medical staff providing Mr. Clifton's vitals and stating that Mr. Clifton had a breathing treatment.

**ANSWER:** **Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

38.    At 9:00 am on March 27, 2016, Defendant Pankow was conducting cell checks when Mr. Clifton requested a nebulizer treatment. Defendant Pankow, instead of responding immediately, with deliberate indifference, he chose to finish his cell checks and then take Mr. Clifton to administer his nebulizer treatment.

11

**ANSWER:      Defendants have insufficient information with which to personally admit or deny the specific activities as alleged, and therefore deny the same.  Defendants specifically deny any alleged deliberate indifference by Pankow.**

39.      Defendant Pankow gave the bag containing the parts to the nebulizer to Mr. Clifton.

**ANSWER:      Defendants have insufficient information with which to personally admit or deny the alleged acts, and therefore deny the same.**

40.      Mr. Clifton advised Defendant Pankow that the nebulizer bag did not contain all of the necessary parts.

**ANSWER:      Denied as alleged.**

41.      Defendant Pankow then noticed Mr. Clifton put the medication into the machine backwards, at which point Defendant Pankow turned his back on Mr. Clifton, in order to dump the medication out in the sink and then Defendant Pankow put new medication into the mouthpiece. While Defendant Shaw heard Mr. Clifton repetitively state "hurry up."

**ANSWER:      Denied as alleged.**

42.      Defendant Kocher walked into the booking area and noted Mr. Clifton holding the nebulizer to his face and was sweating profusely.

**ANSWER:      Defendants admit this occurred on March 27, 2016.**

43.      Defendant Kocher retrieved a tissue or paper towel to wipe his sweat and asked Mr. Clifton if he would prefer a cold washcloth. Mr. Clifton did not respond.

**ANSWER:      Defendants admit the first sentence occurred on March 27, 2016, and admit that Mr. Clifton did not respond to the question.**

44.     Defendant Kocher then noticed that the nebulizer Mr. Clifton was holding was not all the way in his mouth. Defendant Kocher told Mr. Clifton the nebulizer needed to be all the way into his mouth to get the proper treatment. Again Mr. Clifton did not respond. It was at this time Defendant Kocher realized 'something else' was going on with Mr. Clifton.

**ANSWER:     Defendants admit the first three sentences occurred on March 27, 2016, and admit that after the aforesaid allegations occurred, Defendant Kocher may have started to realize there was "something else" medically going on with Mr. Clifton but that "something else" is not defined and therefore it is denied as vague..**

45.     Defendant Shaw and Defendant Pankow helped Defendant Kocher lower Mr. Clifton to the floor as Mr. Clifton began to have a seizure.

**ANSWER:     Admit Defendants Shaw and Pankow assisted Kocher lowering Clifton to the floor on March 27, 2016.**

46.     Defendant Kocher called for an ambulance and Defendant Pankow called for the nurse, Defendant Kemp.

**ANSWER:     Admit the allegation that Defendant Kocher called for an ambulance but deny the remaining allegations as a result of insufficient personal information with regard to timing as alleged.**

47.     Mr. Clifton clearly needed medical attention while incarcerated and specifically needed a trained medical professional when receiving nebulizer treatments.

**ANSWER:     Denied as alleged.**

48.     During the morning of March 27, 2016, when Mr. Clifton requested a nebulizer treatment no medical staff was present to assist and provide the nebulizer treatment until Defendant Pankow called for the nurse.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

49.     It is unclear when Defendant Kocher requested Mr. Clifton's vitals be taken, when they were actually taken or who took them based upon the numerous statements taken from the Defendant Kocher, Defendant Shaw and Defendant Pankow and the other employees of Champaign County Jail who were present at or near the time of these events.

**ANSWER:     Denied as alleged.**

50.     Defendant Kemp began providing direction when she arrived.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny at this time, and therefore deny the same.**

51.     At some point in these series of events, the pulse oximeter indicated that Mr. Clifton did not have a pulse. Defendant Kemp then read Mr. Clifton's radial pulse.

**ANSWER:     Defendants have insufficient information with which to personally admit or deny at this time, and therefore deny the same.**

52.     Defendant Gill went to assist with Mr. Clifton's medical emergency and saw that Mr. Clifton was covered in sweat, had urinated on himself, and that his eyes were rolled to the back of his head.

**ANSWER:     Denied as alleged.**

53.    Defendants Kocher, Shaw, Pankow, Gill, and Kemp were all actively working on Mr. Clifton using an AMBU bag which was failing to deliver air to Mr. Clifton's lungs. Mr. Clifton's tongue had swollen and closed his airway.

**ANSWER:    Denied as alleged.**

54.    Defendants Kocher, Shaw, Pankow, Gill, and Kemp all negligently and with deliberate indifference, failed to initiate CPR on Mr. Clifton, in accordance with their training for which Defendants Walsh, Champaign County, and Correct Care Solutions are responsible.

**ANSWER:    Denied as alleged.**

55.    EMS personnel arrived, and finding that Mr. Clifton had no pulse, immediately initiating CPR on Mr. Clifton. Their initial impression was that he was in respiratory arrest. EMT personnel ventilated Mr. Clifton, started an IV, and placed a monitor on him. The monitor showed a flat line, and Mr. Clifton was asystole.

**ANSWER:    Defendants have insufficient information with which to personally admit or deny, and therefore deny the same.**

56.    Mr. Clifton was transported to Carle Foundation Hospital, where he was pronounced dead on March 27, 2016, at 10:18 am.

**ANSWER:    Admit.**

### COUNT I: Constitutional Deprivation of Mr. Clifton's Constitutional Rights
### Pursuant to 42 U.S.C. §1983 vs. Defendant Kocher

57.    The Plaintiff reincorporates and realleges paragraphs 1-56 as if fully incorporated herein.

**ANSWER:    Defendant Kocher adopts and incorporates each and every one of her answers to paragraphs 1-56 above as and for her answers to this paragraph as if fully reproduced herein.**

58.     Defendant Kocher is the supervisory official responsible for development and implementation of policies and procedures for the identification and handling of inmates suffering serious medical conditions, including chronic obstructive pulmonary disease and asthma.

**ANSWER:    Denied as alleged.**

59.     As the person acting under the color of custom, Defendant Kocher caused Mr. Clifton to be deprived of his constitutional right to life.

**ANSWER:    Denied.**

60.     Defendant Kocher is responsible for conduct of the employees of Champaign County Jails and the well-being of their inmates.

**ANSWER:    Denied.**

61.     Because Mr. Clifton had no control over his confinement, Defendant Kocher had an absolute duty to care for and ensure Mr. Clifton's well-being and safety.

**ANSWER:    Denied.**

62.     After being made aware of Mr. Clifton's medical condition and emergency medical needs, Defendant Kocher exercised deliberate indifference to Mr. Clifton's serious medical needs by failing to provide requested and necessary medical treatment and failing to respond to Mr. Clifton's recurring pleas for medical assistance.

**ANSWER:    Denied.**

16

63.     By failing to call 911 when Mr. Clifton complained of chest pain and shortness of breath on March 26, 2016, and by failing to initiate CPR, Defendant Kocher deprived Mr. Clifton of his constitutional rights.

**ANSWER:     Denied.**

64.     Defendant Walsh was aware of and put on notice of the recent deaths in Champaign County Jails, and through Defendant Walsh's failure to implement policies and procedures to avoid reasonably foreseeable deaths that were avoidable with a modicum of medical training and attention, therefore directly deprived Mr. Clifton of his constitutional right to life.

**ANSWER:     Denied.**

65.     The failure to act on and respond to Mr. Clifton's serious medical needs and medical emergency proximately caused, in whole or in part, his conscious pain and suffering and his death, depriving Mr. Clifton of his rights under the Fourteenth Amendment and in violation of 42 U.S.C. §1983.

**ANSWER:     Denied.**

WHEREFORE, the Defendant, AMBER KOCHER, prays that judgment be entered in her favor, and against the Plaintiff, and for her costs of suit.

**DEFENDANT DEMANDS A TRIAL BY JURY**

**COUNT II: Constitutional Deprivation of Mr. Clifton's Constitutional Rights
Pursuant to 42 U.S.C. §1983 vs. Defendants Bates, Kemp, and Fatoki**

The allegations of Count II are not directed at these Defendants, and therefore, do not respond to the same.

**COUNT III: Custom and Policy of Deliberate Indifference
Pursuant to 42 U.S.C. §1983
vs. Defendants Fatoki and Correct Care Solutions, LLC**

The allegations of Count III are not directed at these Defendants, and therefore, do not respond to the same.

**COUNT IV: Wrongful Death Pursuant to 740 ILCS §180/0.01 et seq. vs. Defendants Walsh,
Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County**

84.     The Plaintiff reincorporates and realleges paragraphs 1-56 as if fully incorporated herein.

**ANSWER:     Defendants adopt and incorporate each and every one of their answers to paragraphs 1-56 above as and for their answers to this paragraph as if fully reproduced herein.**

85.     The Plaintiff brings this action pursuant to the Illinois Wrongful Death Act.

**ANSWER:     Defendants allow the allegations of the Amended Complaint to speak for themselves.**

86.     Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County failed to provide adequate medical care to Mr. Clifton about whose medical conditions they had preexisting knowledge.

**ANSWER:     Denied.**

87.     Defendants Walsh and Champaign County are responsible for developing, implementing, and training employees on policies and procedures which are adequate in preventing unnecessary inmate deaths.

**ANSWER:     Denied as alleged.**

18

88.     Defendants Good and Rzechula failed to provide adequate medical attention by failing to respond to Mr. Clifton's pleas for a nebulizer treatment in a timely manner in the early hours of March 27, 2016.

**ANSWER:      Denied.**

89.     Defendants Pankow, Shaw, Gill, and Kocher failed to respond to Mr. Clifton's medical emergency appropriately by failing to initiate CPR on Mr. Clifton once he became unresponsive.

**ANSWER:      Denied.**

90.     The combined failures of Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County resulted in Mr. Clifton's untimely and unnecessary death.

**ANSWER:      Denied.**

91.     On information and belief, at all relevant times, it was the duty and responsibility of the Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County to exercise reasonable care to provide for the medical needs of Mr. Clifton and all other inmates housed within Champaign County Jail.

**ANSWER:      Denied as alleged.**

92.     As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions and the breach of duty committed by Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County, Mr. Clifton suffered injuries that ultimately resulted in his untimely death.

**ANSWER:      Denied.**

93.    The family of Mr. Clifton has unexpectedly lost forever a loved one. Mr. Clifton was a loving man who left behind his mother, fiancée, children, and brothers.

**ANSWER:    Defendants have insufficient information with which to admit or deny the allegations as alleged; and therefore, deny the same.**

94.    Mr. Clifton's family is not only grieving over their sudden loss but must also cope with the unexpected expense associated with his passing.

**ANSWER:    Defendants have insufficient information with which to admit or deny the allegations as alleged; and therefore, deny the same.**

95.    As a direct and proximate result the breach of duty committed by Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County, Mr. Clifton's survivors suffered pecuniary loss and have been deprived of society, companionship, love, and affection of their son, fiancé, father, and brother.

**ANSWER:    Denied as alleged.**

96.    Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County owed a duty to provide professional and responsible health services to Mr. Clifton. Notwithstanding this duty, after being made aware that Mr. Clifton required emergency medical care, Defendants Walsh, Good, Rzechula, Pankow, Shaw, Gill, Kocher, and Champaign County, acting in accordance with their policies and procedures, willfully, wantonly, or negligently refused to take action to provide Mr. Clifton with medical care, thereby proximately causing, in whole or in part, his conscious pain and suffering and his death.

**ANSWER:    Denied as alleged.**

WHEREFORE, the Defendants, CHAMPAIGN COUNTY SHERIFF DAN WALSH, BRYCE GOOD, JUSTIN RZECHULA, COREY PANKOW, RYAN SHAW, TODD GILL, AMBER KOCHER, and CHAMPAIGN COUNTY, ILLINOIS, pray that judgment be entered in their favor, and against the Plaintiff, and for their costs of suit.

**DEFENDANTS DEMAND A TRIAL BY JURY**

### COUNT V: Wrongful Death Pursuant to 740 ILCS §180/0.01 et seq. vs. Defendants Bates, Fatoki, Kemp, and Correct Care Solutions, LLC

The allegations of Count V are not directed at these Defendants, and therefore, do not respond to the same.

### COUNT VI: Medical Malpractice Pursuant to 735 ILCS §5/2-1704 vs. Defendant Bates

The allegations of Count VI are not directed at these Defendants, and therefore, do not respond to the same.

### COUNT VII: Medical Malpractice Pursuant to 735 ILCS §5/2-1704 vs. Defendant Fatoki

The allegations of Count VII are not directed at these Defendants, and therefore, do not respond to the same.

### COUNT VIII: Medical Malpractice Pursuant to 735 ILCS §5/2-1704 vs. Defendant Kemp

The allegations of Count VIII are not directed at these Defendants, and therefore, do not respond to the same.

### COUNT IX: Medical Malpractice Pursuant to 735 ILCS §5/2-1704  vs. Defendant Correct Care Solutions, LLC

The allegations of Count IX are not directed at these Defendants, and therefore, do not respond to the same.

## **AFFIRMATIVE DEFENSES**

### **Count I**

NOW COMES the Defendant, AMBER KOCHER, Heyl, Royster, Voelker & Allen, and pursuant to the Federal Rules of Civil Procedure 8 (b) and (c), and hereby sets forth the following affirmative defenses to Count I:

1.      Defendant Kocher is entitled to qualified immunity on the federal law claim.

2.      To the extent that Plaintiff's First Amended Complaint references any action or omission on the part of the Defendant more than two years prior to the date that the Plaintiff filed her federal lawsuit on the federal count, said claim is are barred by the statute of limitations.

3.      To the extent that Plaintiff seeks to the above-named Defendants liable for acts or omissions of anyone other than herself under federal law, said claims are barred by law and Section 1983 does not allow claims based on vicarious liability or *respondeat superior* theories.

4.      As to any state law based claim, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. In addition, no public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.  745 ILCS 10/2-102

5.      As to any state law based claim, a local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.  745 ILCS 10/2-109

6.      As to any state law based claim, the individual Defendants as public employee are not liable for their alleged act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.  745 ILCS 10/2-202

7.      As to any state law based claim, Defendants as public employees, as such and acting within the scope of their employment, are not liable for an alleged injury caused by the act or omission of another person.  745 ILCS 10/2-204

8.      As to any state law based claim, no Defendant is liable for alleged injury proximately caused by the failure of the Defendant to allegedly furnish or obtain medical care for a prisoner in his/her custody.  745 ILCS 10/4-105

9.      To the extent that the deceased Plaintiff failed to exhaust his administrative remedies, this Defendant is entitled to a judgment as a matter of law on the claim based on federal law.

**DEFENDANT DEMANDS A TRIAL BY JURY**

> CHAMPAIGN COUNTY SHERIFF DAN WALSH, IN HIS OFFICIAL CAPACITY, BRYCE GOOD, JUSTIN RZECHULA, COREY PANKOW, RYAN SHAW, TODD GILL, AMBER KOCHER, and CHAMPAIGN COUNTY, ILLINOIS, Defendants
>
> BY:   s/Keith E. Fruehling
> HEYL, ROYSTER, VOELKER & ALLEN
> ARDC #: 6216098
> 301 North Neil Street, Suite 505
> P. O. Box 1190
> Champaign, IL  61824-1190
> Telephone  217.344.0060
> kfruehling@heylroyster.com

33925852_1